# CASES

IN THE

# SUPREME COURT OF ALABAMA

## NOVEMBER TERM, 1901.

### Jacobi *v.* The State.

*Indictment for Assault with Intent to Rape.*

1. *Evidence; when secondary evidence of testimony of absent witness admissible.*—When a witness has removed from the State permanently or for an indefinite time, his testimony on any former trial of the defendant for the same offense may be given in evidence against the defendant on any subsequent trial.

2. *Same; same; case at bar.*—On a trial under an indictment for an assault with intent to rape, it was shown that upon a former trial of the defendant for the same offense there was a mistrial; that the woman alleged to have been assaulted was present and testified on the former trial; but that she was not present at the second trial. The return of the officer on the subpoena issued for the woman assaulted showed that she could not be found in the county of her former residence, which was the only residence there was any evidence tending to show she ever had in the State. It was shown that she was not married, and had always resided with her mother. A brother of said witness testified that his mother's home, where his sister lived, had been broken up after the first trial of the defendant, and his mother had moved to Georgia, and that his sister had also gone to Georgia, and that a short time before the present trial, he had received a letter from his sister which was written by her in Georgia, where she had been after the removal from this State. Her brother further testified that after the former trial she stated that she would "rather die than go back to another trial and go through the same ordeal." *Held:* That such evidence showed with requisite clearness that said witness was permanently or indefinitely absent from the State at the time of the trial, and that

secondary evidence of her testimony on the former trial was admissible.

3. *Same; admissibility of evidence.*—In such a case, a statement by the woman assaulted, after the former trial, that she "had rather die than go back to another trial and go through the same ordeal," is admissible in evidence in connection with the inquiry as to whether or not her absence from the second trial was of a permanent or indefinite nature.

4. *Assault with intent to rape; charge to the jury.*—On a trial under an indictment for an assault with intent to rape, a charge is not improperly given at the request of the State, which requires the jury to believe certain facts which the State's evidence tended to show beyond a reasonable doubt, and then directs the jury that they are authorized to look at these facts, "if they be facts," in connection with all the other evidence in the case, in determining whether or not the defendant assaulted the person named in the indictment, and if he did so assault her, whether or not at that time he had the intent to have sexual intercourse with her against her will and by force, if necessary to accomplish his purpose, and then directs the jury that if they are satisfied beyond a reasonable doubt that the defendant had assaulted said person, and had at the time such intent, he would be guilty of an assault with intent to ravish.

5. *Same; same.*—On a trial under an indictment for an assault with intent to forcibly ravish, a charge which instructs the jury that "any touching by one person of the person of another in rudeness or anger is an assault and battery, and every assault and battery includes an assault," is free from error and properly given at the request of the State.

6. *Same; general affirmative charge.*—On a trial under an indictment for an assault forcibly to ravish, where there was evidence introduced tending to support every material allegation of the indictment, the general affirmative charge requested by the defendant is properly refused.

7. *Same; charge to the jury.*—On a trial under an indictment for an assault with intent to forcibly ravish, a charge is erroneous and properly refused which instructs the jury that "in a charge to commit rape, the evidence, to be sufficient to justify conviction, must show such acts and conduct on the part of the defendant, that there is no reasonable doubt of his intention to gratify his lustful desire, notwithstanding any resistance on the part of the female," such instruction assuming that the charge contained in the indictment against the defendant was rape.

8. *Same; same.*—In such a case, the court properly refused the
   following charge requested by the defendant: "Before the
   jury can find the defendant ........ guilty of an assault
   to ravish in this case, the jury must believe from the evi-
   dence, beyond all reasonable doubt that it was the purpose
   of the defendant to fully accomplish his purpose in such a
   manner and by such means that, if accomplished, it would
   be rape; that is, there must be an intent to use force, terror,
   intimidation and the like, necessary to accomplish the pur-
   pose;" such charge having omitted an important word and
   also being unsound, in that it was not essential to the crime
   of an assault with intent to ravish  that  the  perpetrator
   should have the intent that his accomplished purpose should
   be rape.

9. *Same; same.*—In such a case the following charge requested
   by the defendant was properly refused: "The court charges
   the jury that the State is required to show by evidence, be-
   yond a reasonable doubt and to a moral certainty, the exist-
   ence of every fact necessary to establish the guilt of the de-
   fendant before he can be convicted. If from all the evidence
   to be proved"; said charge being incomplete on its face.

10. *Abstract charges* are properly refused.

APPEAL from the City Court of Montgomery.

Tried before the Hon. WILLIAM H. THOMAS.

The appellant in this case, Sanford Jacobi, was in-
dicted and tried for an assault upon Lizzie Parker,
"a woman, with the intent forcibly to ravish her,
against the peace and dignity of the State of Alabama;"
was convicted of the offense charged in the indictment,
and sentenced to the penitentiary for twenty years.

The appeal in this case is taken from a judgment
rendered on the second trial. The first trial resulted
in a mistrial. At the first trial Lizzie Parker, the per-
son assaulted, was present and testified as a witness.
Lizzie Parker was not present at the second trial, but
secondary evidence was introduced as to what she tes-
tified upon the first trial. The defendant objected to
the introduction of this evidence, and separately ex-
cepted to the court's overruing each of his objections.
The facts relating to the introduction of the secondary
evidence are sufficiently shown in the opinion.

The evidence for the State tended to show that Miss
Lizzie Parker arrived in Montgomery at night from

Butler county, where she had been visiting; that she was on her way to Clanton, in Chilton county, where she resided with her mother; that the train on which she came to Montgomery did not make connection with the train going to Clanton and that it was necessary for her to remain in Montgomery over night; that she had some relatives living in Montgomery, and that while talking to a transfer man about going to the house of her relatives her conversation was overheard by the defendant; that the defendant stated to her that he knew her relatives and where they lived, and, after some conversation, induced her to let him go with her to the place of business of her said relative; that after going to the place of business, the defendant and Miss Parker walked to the principal street in Montgomery where he secured a hack; that defendant gave instructions to the hackman to take him and Miss Parker to an assignation house; that upon arriving at said house he went in the room with Miss Parker and attempted forcibly to ravish Miss Parker, and that while so attempting two policemen came to the door of the room where the defendant and Miss Parker were.

The theory of the defendant was that there was no attempt forcibly to ravish Miss Parker, but that what was done by the defendant was the outgrowth of passion and was not seriously objected to by the prosecutrix.

Upon the introduction of all the evidence the court, at the request of the State, gave to the jury two written charges. The second of these charges is copied in the opinion. The first charge was as follows; (1.) "If the jury believe from the evidence beyond a reasonable doubt that in this county and within three years before the finding of this indictment, the defendant, by a false representation of the character of the house, induced Miss Parker to go with him to an assignation house, that, arriving there, he locked the door of the room, took off his coat and put his arm around her and asked her to have sexual intercourse with him; that she refused and moved her seat; that he followed her to the bed when she sat down upon the side thereof, if she did so sit, and again put his arm around her,

forced her down upon the bed and threw his leg over her, at the same time having his pants unbuttoned and exposing that part of his person, and that while in said room said Jacobi told her that she had to stay with him; that afterwards she got away from the bed and started across the floor, he again caught hold of her and was holding her when there was a knock upon the door, and then he released her, and started to putting on his clothing, the jury are authorized to look at these facts, if they be facts, in connection with all the other evidence in the case in determining whether or not the defendant assaulted Miss Lizzie Parker, and if he did so assault her, whether or not at the time of such assault he had the intent to have sexual intercourse with her against her will and by force, if necessary to accomplish his purpose, and if the jury are satisfied beyond a reasonable doubt that defendant did assault Miss Lizzie Parker and had at the time such intent he would be guilty of an assault with the intent to ravish, and the jury should so find." To the giving of this charge the defendant separately excepted. The defendant also separately excepted to the court's refusal to give the following charge requested by him: "If the jury believe the evidence in this case, they must find the defendant not guilty of the charge of an assault with the intent to ravish, as charged in the indictment."

The defendant also separately excepted to the court's refusal to give each of the following charges requested by him: (1.) "In a charge to commit rape, the evidence, to be sufficient to justify conviction, must show such acts and conduct on the part of the defendant that there is no reasonable doubt of his intention to gratify his lustful desire, notwithstanding any resistance on the part of the female." (2.) "Before the jury can find the defendant .......... of an assault to ravish in this case, the jury must believe from the evidence, beyond all reasonable doubt, that it was the purpose of the defendant to fully accomplish his purpose in such a manner and by such means that, if accomplished, it would be rape; that is, there must be an intent to use force, terror, intimidation and the

[Jacobi v. The State.]

like, necessary to accomplish the purpose." (3.) "The court charges the jury that the State is required to show by evidence, beyond a reasonable doubt and to a moral certainty, the existence of every fact necessary to establish the guilt of the defendant before he can be convicted. If from all the evidence to be proved." (4.) "If the jury believe from the evidence that there was anything in the conduct of Miss Parker which impliedly gave her consent to the defendant to put his arms around her, and take liberties with her, and he did not put his hands upon her in a rude or angry manner, but under the mistaken belief that she consented thereto, then, upon this state of facts without more the defendant would not be guilty of an assault, or an assault and battery."

J. M. CHILTON and HENRY LAZARUS, A. A. WILEY and JOHN W. A. SANFORD, JR., for appellant.—The admission of such statements and declarations, under the circumstances disclosed by the record in this case, without any attempt to make proof of the fact (if it were a fact) that the prosecuting witness, under the direction or influence of the accused, was removed from the jurisdiction of the court, denied to him not only the protection accorded by the fundamental law of the State when it vouchsafed, in its Bill of Rights, to every citizen charged before its courts with offenses, that "in all criminal prosecutions the accused has the right to be confronted by the witnesses against him," but it violates those substantial and fundamental rights of every American citizen, who enjoys, as his birthright and by right of inheritance, the protection accorded him by the Fourteenth Amendment to the Constitution of the United States, and would have the effect, if countenanced by the judicial department of the government, of depriving him of his liberty without due process of law.—*Holden v. Hardy,* 169 U. S. 387; *Hurtado v. California,* 110 U. S. 516; *Lowe v. Kansas,* 163 U. S. 85; *Civil Rights Case,* 100 U. S. 11; *United States v. Cruikshank,* 92 U. S. 542; *Virginia v. Rives,* 100 U. S. 313; *Ex parte Virginia,* 100 U. S. 339.

The right of the accused in all criminal proceedings to be confronted with the witnesses against him, as ascertained by the common law and imperishably embodied in the Bill of Rights of Magna Charta, transmitted to and inherited by the American citizen under the protective provisions of the Fourteenth Amendment to the Constitution of the United States, which forbids its denial, has been generally recognized in this country. That there has been legislation in some of the States which, outside and beyond the exceptions which we have discussed, have authorized the admission of secondary proof because of the absence of the witnesses previously examined, from the jurisdiction, or from other causes stated in the statutes; and some jurisprudence independent of statute, which added another exception to the general rules prevailing at the common law, and which limitations alone qualified the substantial and fundamental right of the accused to confrontation with the witnesses against him—is a fact, however reluctantly the admission is made, that we concede to be true. But, whether it be legislation or judicial decision, either or both are open to the charge that they operate an infraction of that substantial and fundamental right guaranteed to all freemen, and, under the test of judicial analysis, measured by Magna Charta and the Constitution of the United States, must fall under the ban of unconstitutional legislation, and, as to judicial decisions, prove obnoxious to the fundamental principles of republican institutions and free government.—Wharton on Criminal Evidence, § 229; Taylor on Evidence, § 474; Cooley's Constitutional Limitations, 387; *Mattox v. United States,* 156 U. S. 240; *Case of Sir John Fenwick,* 13 Howell's State Trials, 537, 579, *et seq.; Kirby v. United States,* 174 U. S. 60; *Murray v. Louisiana,* 163 U. S. 101; *Reynolds v. United States,* 98 U. S. 145.

There was not a sufficient predicate laid in this case for the introduction of secondary evidence. It was not sufficiently shown that the witness Lizzie Parker was permanently or indefinitely absent from the State. *Harris v. State,* 73 Ala. 495; *Mitchell v. State,* 114 Ala.

·1; *Floyd v. State,* 82 Ala.. 22·;. *Lowe v. State,* 86 Ala. 49; *Thompson v. State,* 106 Ala. 67; *Percy v. State,* 125 Ala. 52; *Dennis v. State,* 118 Ala. 72.

.CHAS. G. BROWN, Attorney-General, for the State.

McCLELLAN, C. J.—Upon a full and exhaustive consideration of the question on principle and authority, this court in *Lowe v.* State, ruled that "the testimony of a witness on a former, trial or prosecution of the defendant, for the same offense, is admissible as evidence against him on a second trial, if the witness is beyond the jurisdiction of the court, whether he has removed from the State permanently or for an indefinite time;" or, to state the ruling perhaps more accurately, that when the witness has removed from the State permanently or for an indefinite time, his testimony on any former trial of the defendant for the same offense may be given in evidence against the defendant on any subsequent trial.—86 Ala. 47. This decision has been often followed and reaffirmed by this court. We are entirely satisfied of its soundness; and we now again follow and reaffirm it.

Whether the predicate for the introduction of secondary evidence reproducing the testimony of Miss Parker on the former trial was sufficiently and properly laid on the last trial, is another important question for adjudication on this appeal. Of course the burden was upon the prosecution to show to the reasonable satisfaction of the trial judge that the witness had left and was out of the State at the time of the trial, and that her absence was of a permanent or indefinite nature. On this matter evidence was adduced before the judge of the city court that process to secure the witness' attendance had been sent to the counties of Chilton, Jefferson and Butler. Chilton was the county of the witness' last known residence in this State. The process was returned from that county "not found." It does not appear in the evidence why process was sent to the county of Jefferson. It, too, was returned "not found." It appeared that the witness had. at some indefinite

time in the past taught school in Butler county, that after this, she returned there in the summer of 1900 on a visit, and that she was returning from that visit to her home in Chilton county when the assault was committed on her by the defendant. This writ to Butler county had not been returned. The further evidence adduced by the State tending to prove that the witness was permanently or indefinitely beyond the jurisdiction of the court was the testimony of C. E. Thomas, as follows: "That he is a half brother of Miss Lizzie Parker [the absent witness] of Clanton, Alabama; that he resides in Birmingham, Alabama, and has been residing and was so residing there on the 23rd day of June, 1900 [the date of the offense]; that he had not resided with his mother and sister for the past five or six years; that on or about the 23rd day of June, 1900 his mother, who was then residing in Clanton [Chilton county], became quite ill, and wired for witness to come to her bedside; she also summoned his sister, Miss Lizzie Parker, who was on a visit to relatives at Chapman in Butler county, and that she arrived at Clanton on Sunday, the 24th day of June, 1900; that his sister said nothing to him as to what occurred between her and Sanford Jacobi in Montgomery on the previous night, and that he knew nothing of it until he saw and read a publication thereof in the Montgomery Advertiser on Tuesday morning, June 26th, 1900; that he then mentioned the matter to his sister, and she said she was sorry any publicity had been given to the matter as it would tend to injure her; that Miss Lizzie Parker was about twenty-three years old in June, 1900, and lived with her mother in Clanton, Alabama, and that she had no other home than with her mother, and that her mother had no other home in June, 1900; that his mother is a widow; that sometime in the month of January, 1901, his mother broke up her home in Alabama, and sold her house and lot and sold off all her household goods, except a little furniture which has not yet been sold, broke up housekeeping and went to Georgia; that his sister, Lizzie Parker, had gone to Georgia before her, about the 1st of January, 1901; that he had received a letter from his sis-

ter, Lizzie, which he knew to be in her handwriting, about two weeks before the date of this trial [August 5, 1901], from Buena Vista, Georgia, the envelope containing said letter being postmarked Buena Vista, Ga., that his sister is an unmarried woman and has no home other than that of her mother; that witness at the time she left Alabama, did not say anything about a change of domicile, or about leaving the State permanently, or about acquiring a residence elsewhere than in Alabama; that witness did not know when his sister would return to Alabama, if at all, and that he knew nothing whatever about her intentions upon this subject; that his sister, Miss Lizzie Parker, had testified as a witness for the State at the October term, 1900, on the trial of the case of the State against Sanford Jacobi under this indictment, and that said trial resulted in a mistrial, and that shortly after the former trial, which occurred in November, 1900, he had a conversation with his sister, Lizzie Parker, in reference to said trial, in which she stated: 'I had rather die than to come back to another trial and go through the same ordeal.'" On the cross-examination of the witness Thomas, in answer to a question propounded by defendant, as follows: "Are you able to state whether or not your sister's stay in Georgia is indefinite," the witness said he could not. In answer to another question propounded by defendant, witness said he "was not able to state whether or not his sister, Lizzie Parker, was in the State of Alabama at this time or not, nor was he able to say whether or not she had been continuously absent from the State of Alabama from the time she left Clanton in January, 1901, up to the time witness received said letter from some point in Georgia, the envelope of which was postmarked 'Buena Vista, Ga.,' as he had before testified."

The absence of a witness from the State may, for the purpose under discussion, be shown in two ways. It may be made to appear by evidence of a proper and fruitless search for him in every county in which there is any apparent likelihood of his being found, from which an inference may be reasonably drawn that he

is beyond the jurisdiction of the court; or, without resorting at all to proof of such vain search, it may, of course, be shown directly that he is in another State under circumstances from which it is fairly inferable that his return is contingent, uncertain and speculative.—*Mitchell v. State*, 114 Ala. 1; *Thompson v. State*, 106 Ala. 67, 74. And evidence of this latter character may, of course, be strengthened in respect of the absence from this State by the fact that officers charged under process with the duty of finding him here have failed to find him in the county of his former residence. We do not understand that it was sought to lay the necessary predicate in this case by evidence of the former class, but that the evidence of the issue and return of subpoenas or attachments was intended to be and was considered by the trial court only along with the other evidence as to this witness being in the State of Georgia. None of the evidence as to the writs was of importance except that as to the process which went to Chilton county, the former home of the witness. It did not appear that there was any likelihood of the witness being in the county of Jefferson or in the county of Butler. It was not shown that she had ever been in Jefferson or had any occasion to be there. So the fact that she was not there when the writ was in the hands of the sheriff of that county has no legitimate tendency to show that she was out of the State. As to Butler county it was shown that she had been there temporarily at some unidentified time in the past engaged in teaching a school, but this engagement had ended some considerable time before the offense charged; and that just before the assault upon her she had returned to that county on a visit to relatives, a necessarily temporary occasion which had ended on the day of the assault. There being no likelihood of her presence in Butler county at the time of the trial or just prior thereto there was no occasion to send process to that county for her, the return of not found on such process would not have shown that she was absent from the State, and the failure of the officer to return the writ at all neither authorizes an inference that she was in that county nor goes to weaken other evidence

tending to show that she was beyond the jurisdiction of the court. But the return of the sheriff of Chilton county that she could not. be found in the county of her former residence was pertinent and competent, and entitled to consideration in connection with the other evidence going to show her absence from the State.

The inquiry then being whether the witness was beyond the jurisdiction of the court, that is, beyond the boundaries of the State, we have a return of an officer going to show that she could not be found in the county of her former residence, the only residence there is any evidence tending to show she ever had in the State, and with this the testimony of her brother, that her home had been up to January, 1901, with her widowed mother in Clanton, Chilton county, that in said month this home had been entirely broken up, that the mother sold her house and lot—her home—in Clanton, and all her household effects except a little furniture "which has not yet been sold,"—the inference being that even this remnant was for sale—"broken up housekeeping," "broke up her home in Alabama, and went to Georgia," that his sister also went to Georgia, that she, the sister, was in Georgia six months after this removal, the prima facie presumption being that she had remained there during that time, and was in Georgia two weeks before this trial, the prima facie presumption being that she had continued there up to and was there at the time of the trial; and, in effect, that if either the mother or sister had ever returned to Alabama he, the son and brother, knew nothing of it. In addition to this there is evidence of a motive on the part of Miss Parker to remove herself beyond the jurisdiction of the court and to remain out of the State indefinitely. She declared to her brother sometime within the period of less than two months intervening between the time of the first trial and her departure to Georgia, that she had rather die than return and go through the ordeal of another trial, her precise language being: "I had rather die than to come back to another trial and go through the same ordeal." Here there is proof of adequate motive for Miss Parker to leave and to remain indefinitely out

of the State. Here is proof that the only home she had
or ever had in the State was broken up, the house that
sheltered her and the household goods sold. Here is
proof that the mother, with whom she lived and had al-
ways lived, and naturally would live as long as she re-
mained unmarried, having no longer a home in Ala-
bama, nor aught else, so far as the evidence goes, to
keep her here or to bring her back, but having thus
disposed of all her effects, went to Georgia, and the
daughter with her; and *prima facie* that since they
went they have there remained, and were there at the
time of the trial. Being there under these circumstances
there is no warrant for saying their stay is of a tem-
porary nature, but every pertinent consideration points
to its indefiniteness, if not indeed to its permanency.
So we conclude, in line, we believe, with all of our ad-
judications, all of which have been attentively consid-
ered, that the evidence with requisite clearness showed
that the witness, Lizzie Parker, was permanently or in-
definitely absent from the State at the time of the trial
below, and that the city court properly admitted evi-
dence of her testimony on the former trial.

We have not been inattentive to the objection and ex-
ception reserved in the court below to the admission in
evidence of the declaration of Miss Parker that she
"had rather die than to come back to another trial and
go through the same ordeal," nor to the strong argu-
ment of counsel in support of that exception. But we
are of opinion that the position is not tenable, and that
the declaration belongs to that class of expressions of
present mental conditions which are competent as excep-
tional from the rule against hearsay and wholly apart
from the doctrine of *res gestae.* There being evidence of
Miss Parker's having left and being absent from the
State, the further inquiry was whether that absence was
of a temporary, or of a permanent or indefinite nature,
and this was largely a matter of intention on her part
deducible from the considerations and purposes which
actuated her in leaving and remaining out of the State.
Expressions by her of mental conditions having a bear-
ing on this inquiry which to all appearances were made
naturally and sincerely, are admissible as original ev-

idence. It is of this class of declarations among others that Mr. Greenleaf says: "Wherever the bodily or mental feelings of an individual are material to be proved, the usual expressions of such feelings, made at the time in question, are also original evidence. If they were the natural language of the affection, whether of body or mind, they furnish satisfactory evidence and often the only proof of its existence; and whether they were real or feigned is for the jury to determine [the court in this instance]. In the words of L. J. Mellish: 'Wherever it is material to prove the state of a person's mind, or what was passing in it, and what were his intentions, there you may prove what he said, because that is the only means by which you can find out what his intentions were.' This use of such statements is often spoken of as admissible under the *res gestae* notion, or as 'original' evidence, i. e., not an exception to the Hearsay rule. But this seems clearly unsound. There is one sort of evidence of mental condition which is in truth merely indirect or circumstantial, and, therefore, not subject to the Hearsay rule, e. g., where the sharpening of a knife on the morning before the homicide is taken as evidence of a design to kill, or where the repeated infliction of blows indicates malice, or where running away is taken as indicating fear. But where a distinct assertion in the forms of words predicating a mental state is offered,—as 'I have a pain in my side,' or 'I have the intention of going to town,' or 'I do this for such and such a reason,'—this language is no less an assertion of the existence of a fact than is an assertion of any other sort of fact; in the neat phrase of L. J. Bowen: 'The state of a man's mind is as much a fact as the state of his digestion;' and, therefore, such assertions, being taken on the credit of the declarant as testimonial evidence of the fact asserted, are met by the Hearsay rule. To admit them then is to make an exception to the Hearsay rule. The different kinds of facts that may be the subject of such assertions may be grouped as follows: (1.) Assertions of pain or other physical condition; (2) assertions of plan, design, intention; (3) assertions of feeling,

emotion, motive, reason; (4) sundry assertions by a testator."

"The existence of a person's design or plan to do a thing is relevant circumstantially to show that he ultimately did it. The presence of the design or plan may be evidence circumstantially by conduct; but the persons' assertion of a present design or plan when made in a natural way and not under circumstances of suspicion, is admissible under the present exception. The *res gestae* notion is often put forward, but improperly, as the justification of this; for the reason already explained such statements must be regarded as admissible by virtue of the present exception. They are generally treated as admissible; though a few courts are found to exclude them, usually through a misapplication of the *res gestae* principle. Statements of intent where the intent becomes material in determining a person's domicile, are sometimes treated as admissible by reason of the *res gestae* or verbal-act doctrine; but it is perhaps better to regard them as governed by the present exception. Statements of intent accompanying an alleged crime are usually admitted according to the *res gestae* doctrine."

"Statements of reason, motive, feeling, emotion are equally included under the general principle, and are admissible so far as they appear to be natural and sincere. For example, where the reason or motive for the departure of certain workmen was a part of the plaintiff's case, the statements of the workmen to the superintendent, when leaving, as to their reason for it, were admitted. * * * So also statements describing one's fear, belief, cheerful or melancholy feelings or the like, physical disgust, hostility or affection, and the like."—1 Green. Ev., §§ 162*a*-162*d*. The Supreme Court of Minnesota applied the principle just stated to the declaration of an absent witness that he was then domiciled in another State, in connection with evidence that he had left the State of the forum; and held on evidence very like that in the case before us that the testimony of the witness on a former trial was admissible. *King v. McCarthy*, 54 Minn. 190. In a leading case in Massachusetts, the court held: "Declarations of a per-

son accompanying a change of his abiding place have always been held competent to explain the change as a part of the *res gestae;* but declarations in such cases are often admissible on a broader ground than as part of the act of removing from one place to another. The intention of the person removing is competent to be proved as an independent fact, and anything which tends to show his intention in making the change may be introduced if it is free from objection in other particulars. The intention may be inferred from acts and conduct, and conduct which tends to show the intention is competent for that purpose. Declarations which indicate the state of mind of the declarant naturally have a legitimate tendency to show intention."—*Viles v. Waltham,* 157 Mass. 542.

The declaration of Miss Parker showed a state or condition of her mind bearing directly on the inquiry whether she had left the State and whether her absence was temporary, or indefinite or permanent, and tended naturally to show such motive and intent in leaving as supports the conclusion that her absence is at least of an indefinite nature. It was properly received in evidence and considered by the city court, under the authorities and principles to which we have adverted, and is a part of the evidence for our consideration here in determining whether the witness is indefinitely absent from the State. The declaration is a perfectly natural one for Miss Parker to have made under the circumstances, and entirely in line with the disposition to avoid putting herself forward and publicity which she has shown throughout the case. There can scarcely be a doubt that the declaration was a sincere statement of the condition of her mind on the subject of attending another trial of this defendant, a condition which would naturally lead her to leave and remain away from the State.

It may be that the evidence before the judge of the city court other than this declaration was sufficient to establish the necessary predicate for proof of Miss Parker's former testimony. We have not considered it except in connection with the declaration, deeming that

clearly competent. And if such other evidence was sufficient, the admission and consideration of this declaration by the city court, conceding the action to have been erroneous, would not require or authorize a reversal. This issue upon which the declaration was received was one solely for the determination of the judge. The evidence was addressed to him alone, and not to him and the jury, as, for instance, evidence to lay a predicate for confessions is addressed; and the question here is not whether he received irrelevant or otherwise incompetent evidence, but whether the competent evidence before him proved the preliminary facts involved in the inquiry.—*Burton v. State,* 107 Ala. 68.

The first charge given at the request of the State is not open to the criticisms made by counsel. The charge in its forepart requires the jury to believe the facts hypothesized beyond a reasonable doubt, and then, before directing the jury as to any conclusion upon them, the charge declares that the jury are authorized to look at these facts *if they be facts,* in connection with all the other evidence, etc., etc.; thus authorizing a consideration of facts stated hypothetically, not if believed by the jury merely, and not even merely if believed beyond a reasonable doubt by the jury, but if and only if the facts absolutely exist. The charge in this respect is too favorable to the defendant. If it is faulty in singling out certain facts to the exclusion of others, that fault would not require a reversal for the giving of it.

We do not feel that any argument or suggestion is necessary to sustain the proposition of the second charge: "Any touching by one person of the person of another in rudeness or in anger, is an assault and battery; and every assault and battery includes an assault."

That there was evidence before the jury tending to support every material allegation of the indictment there can and is no sort of doubt; and for the court below to have given the affirmative charge requested by the defendant would have been a most palpable and flagrant invasion of the right and exclusive province of

the jury to pass upon the sufficiency of this evidence.

Charge 1 was properly refused to the defendant for that it assumes that the charge against him was rape; and if this fault were eliminated, its refusal would yet not work a reversal because the substance of it was given the jury in another instruction requested by the defendant.

Charge 2 refused was properly refused both for the reason that an important word intended to be in it is omitted from it, and for the further reason that with the word supplied the charge is unsound. It is not essential to the crime of assault with intent to ravish that the perpetrator should have intended that his accomplished act should be rape. The expression of the charge is inapt and inaccurate.

Charge 3 refused to defendant is elliptical and incomplete on its face.

Charge 4 · refused to the defendant was abstract. There was no evidence of any conduct or anything in the conduct of Miss Parker which impliedly or otherwise gave her consent to the liberties taken by defendant with her person. The charge also specifies some facts and excludes others from the jury's consideration.

We find no error in this record, and the judgment of the city court must be affirmed.