**M. L. TAYLOR v. STATE OF FLORIDA**

31 So. (2nd) 47                    January Term, 1947
June 6, 1947                        Division A
As modified on denial of rehearing July 8, 1947

Oxford & Oxford, and D. C. Laird, for appellant.

J. Tom Watson, Attorney General and Reeves Bowen, Assistant Attorney General, and Rebecca Bowles Marks, Special Assistant Attorney General, for appellee.

CHAPMAN, J.:

The County Solicitor of Polk County, Florida, by information charged Lloyd Kelley and M. L. Taylor with the larceny of 113 boxes of citrus fruit, property of B. T. Reynolds, Emmie R. Adams, and W. E. Adams, as executors of the estate of C. W. Adams, deceased, and Ophelia Hunter Kirkland, as sole successor trustee of the estate of L. P. Kirkland, deceased. The jury rendered a verdict of guilty of petit larceny against Kelley and grand larceny against Taylor, and appropriate judgments were entered on the verdict. Taylor appealed.

He contends that the judgment against him should be reversed because of the variance between the proof and allegations of ownership of the 113 boxes of citrus fruit stated in the information. Counsel cites our recent holding in Adams v. Adams, 158 Fla. 173, 28 So. (2nd) 254, and emphasizes the fact that we held that the ownership of the 1945 and 1946 crops of citrus fruit was a part of the homestead and upon the death of Charles W. Adams the title and ownership of the 1945 and 1946 citrus crops passed to his heirs and not to the executors of Adams' will. The information alleges the ownership of the 113 boxes of citrus fruit to be in the executors of Adams' estate.

An indictment laying the ownership of stolen property in one who is its custodian and entitled to its possession is suf-

ficient. Parker v. State, 75 Fla. 741, 78 So. 980, 2 A. L. R. 350. Where ownership of stolen property is alleged to be in a custodian entitled to possession meets the requirements of the law. Mathew v. State, 85 Fla. 194, 95 So. 609. No indictment or information shall be quashed . . . or a new trial granted on account of any defect therein . . . or for any other cause unless the court shall be of the opinion . . . that the conviction will expose him . . . to substantial danger of a new prosecution for the same offense. Although the information is defective, we do not think that a new trial should be awarded on this ground.

The prosecution in the court below charged the exportation jointly by Kelley and the appellant of 113 boxes of citrus fruit on May 9, 1946, valued at $3.00 per box and of a total value of $339.00. The contention is that the jury by its verdict found Kelley guilty of petit larceny and the appellant guilty of grand larceny and therefore the verdicts being inconsistent a new trial should be awarded to Taylor. It is quite true that the two verdicts appearing in the record sustain this view, but Kelley apparently is satisfied therewith as he has not perfected an appeal here. The appellant cannot sustain his contentions of inconsistency of the verdicts because the Kelley verdict and judgment is not before us.

There is considerable testimony in the record to support the contention that the 113 boxes of citrus fruit was by the appellant on the afternoon of May 9th, 1946, by truck driven by the appellant brought from the Pansy Lake grove situated some few miles out of Avon Park and owned by the Stewarts and sold to Robert Brothers at Winter Haven. It is not disputed that Taylor was under contract to pick and haul for the Stewarts the fruit on the Pansy Lake grove. The record of field boxes of citrus fruit leaving the Pansy Lake grove was kept viz: The foreman of the picking squad, after the boxes were placed on the truck, issued a statement in triplicate showing the grove, date and number of field boxes on the truck. The original of the triplicates went to (1) owner of the fruit; (2) the second sheet went to the truck driver; and (3) the foreman of the pickers' squad retained the last. The books of the parties were made from these records.

The State during the progress of the trial adduced before the jury Exhibit No. E and is viz: ·

"DEFENDANT'S EXHIBIT NO. E
FLORIDA CITRUS FRUIT

Auburndale, Fla., May 9, 1946

Received from Stewart Pac. Co.
Pansy Lake Grove

_____Field Boxes of Grapefruit
\_\_\_113_____Field Boxes of Oranges
_____Field Boxes of Tangerines
_____Field Boxes of _____

Truck x _____
Driver x _____

(signed) M. L. Taylor

_____

Foreman"

The record disclosed that the State witness, Lawrence M. Giddens, was the field supervisor of the Stewart Packing Company and the company had a record of the fruit taken from the Pansy Lake Grove on May 9, 1946. Counsel for appellant requested the witness Giddens to go to the office of his company, obtain therefrom the records of May 9, 1946, and return and place the record before the jury. It is contended that the appellant's rights were prejudiced when the trial court declined to order the witness Giddens to return to the trial with the desired record. We fail to find merit in the contention because the record could have been produced if counsel had filed a praecipe for a subpoena duces tecum requiring the production of this record.

The Exhibit No. "E" *supra* is shown to be a part of the State's Exhibit No. 2, which was adduced into evidence by the County Solicitor without objection on the part of counsel for appellant. Counsel now complains of the ruling of the trial court in not permitting or allowing the appellant to adduce into evidence in his own behalf a copy of Exhibit No. E *supra* and in sustaining the County Solicitor's objections to the introduction of the same. It has not been made to appear that the appellant was prejudiced by this adverse ruling.

The sufficiency of the evidence to sustain the verdict against the appellant as found by the jury was raised and duly presented in the court below, both by an appropriate motion for a directed verdict and by a motion for a new trial. It is the theory of the State, as reflected by the evidence, that the 113 boxes of citrus fruit were grown during the years 1945 and 1946 on the "Tennessee Eighty" grove owned by the C. W. Adams heirs, and processed for shipment by the Adams Packing Company of Auburndale, Florida. The appellant was picking, gathering and hauling citrus fruit on the Tennessee Eighty Grove pursuant to agreement with the owner and was so engaged on May 9, 1946. It is the appellant's contention that the 113 boxes of citrus fruit were not grown on the "Tennessee Eighty" grove but on a grove owned by a Mr. Stewart situated near Avon Park, and on the afternoon of May 9, 1946, the appellant, in a 1933 or 1934 Ford Truck, went to the "Pansy Lake" Grove, near Avon Park, and received the oranges in question, which were loaded into the body of the truck. The foreman of the packing squad issued to the appellant a statement for 113 boxes of citrus fruit—a statement similar to defendant's Exhibit No. E, *supra*—a copy of the statement went to Stewart, the grove owner, and the foreman retained a copy. The appellant's contract with Stewart for the picking, hauling and sale of fruit on the Pansy Lake Grove authorized the appellant to sell the same to Robert Brothers at Winter Haven.

The pivotal point of the whole controversy is whether the citrus fruit loaded on the 1933 or 1934 Ford truck owned by the appellant and driven by Lloyd Kelley to the Robert Brothers' Packing plant on May 10, 1946, was grown on the Tennessee Eighty and the property of the Adams estate, or was the fruit grown on the Pansy Lake Grove owned by a Mr. Stewart. It is conceded that the appellant had a lawful right to sell the fruit owned by the Stewarts and grown on the Pansy Lake Grove situated near Avon Park, but such right in behalf of the appellant did not exist as to the fruit grown on the Tennessee Eighty grove.

The testimony adduced by the State to show that the fruit was of the Valencia variety and grown on the Tennessee

Eighty grove when contrasted with the testimony adduced by the appellant to the effect that the fruit was not grown on the Tennessee Eighty but on the Pansy Lake grove situated near Avon Park presents squarely a jury question, and, as the writer views it, is a borderline case.

Witnesses for the defense testified that Taylor took the 113 boxes of fruit from the Pansy Lake Grove in a 1933 or 1934 model Ford truck; that the oranges were loose and in the bed of the truck; that Taylor left Pansy Lake around 4:00 or 4:30 P. M., May 9, 1946; that the load contained a sprinkling of Valencias and other fruit; Mr. Taylor could not deliver the fruit at the packing house, as the plant had closed for the day; he drove the truck to the Tennessee Eighty grove and Lloyd Kelley took the Taylor load of fruit in the Ford truck, kept it at his father's home and was about to deliver it at the Robert Brothers plant at Winter Haven the following day when arrested. Kelley, in his statement, stated that the fruit came from the Tennessee Eighty but during the progress of the trial changed his testimony on several important points. Mack Spears, John B. Guy, Hurley D. Guy, Otis Guy, and M. M. Guy testified that the fruit came from the Pansy Lake Grove.

Lawrence Giddens, an employee of the Stewart grove, testified that he was about the grove until 4:30 P. M. on May 9, 1946, and that M. L. Taylor did not come to the Pansy Lake Grove nor take any fruit from the place during the period of time he was about the grove. Ted Drake examined the load of fruit in question and testified that the load was fully matured Valencias. Such a variety was taken from the Tennessee Eighty Grove. Fully matured Valencias were not on the Pansy Lake Grove on May 9, 1946.

It is our conclusion that the disputes and conflicts in the testimony were for the jury to decide, under appropriate instructions from the trial court. We fail to find reversible error in the record.

Affirmed.

THOMAS, C. J., TERRELL, J., and HOLT, Associate Justice, concur.