93 So.2d 716 (1957)
Jerry MANNING, Appellant,
v.
STATE of Florida, Appellee.
Supreme Court of Florida, Division B.
March 13, 1957.
Rehearing Denied April 12, 1957.
*717 Carr & O'Quin, Miami, for appellant.
Richard W. Ervin, Atty. Gen., and David U. Tumin, Asst. Atty. Gen., for appellee.
O'CONNELL, Justice.
Jerry Manning and Robert Shepard were indicted on February 21, 1956, in two counts with the crime of rape and in the alternative with aiding and abetting the rape of Carol Ann Donnelly. Upon trial, the jury returned a verdict against Manning of guilty of assault with intent to commit rape. A verdict was also returned finding the accused, Robert Shepard, not guilty. Manning received a twenty-year sentence and thereupon entered this appeal.
Carol Ann Donnelly, the victim of the alleged assault, was fifteen years of age. The sordid events which are alleged to have taken place will not be set out in detail. Briefly, the following events appear to have transpired.
Defendant Manning approached the girl on Wednesday night, July 20, 1955, asking to be allowed to take her home. Miss Donnelly was at the time working as a curb girl at a drive-in restaurant. Manning had met the girl on a previous occasion but the two had never before gone out together. She informed him she would go home with him if he would first go inform her mother that she would be working a bit late that night and that Manning would bring her home. Manning left and when he returned informed her that her mother said it was all right for him to take her home, and that they could go have a cold drink first. Miss Donnelly discovered later that Manning had not approached her mother at all. After Miss Donnelly, the prosecutrix, got off work she and Manning went to another refreshment place for their cold drinks. When they left, Manning did not head for her home and when she asked where they were going he replied he wished to show her where he raced motorcycles on Sundays. She protested, due to the lateness of the hour. However, Manning proceeded, driving out to a deserted air strip near Opa Locka. He parked near another parked car. The prosecutrix testified that he attempted against her will to have intercourse with her and then called to the other car, whereupon the accused Shepard and another young man, James Wiltsey, got out of that car and came over to Manning's car. The prosecutrix claims they all three tried to have intercourse with her against her will. At one time, prior to trial, she had intimated that all three of the young men raped her and it was her intention to prosecute the three of them. Her testimony at the trial was to the effect, however, that Manning and Shepard actually had intercourse with her but that Wiltsey did not, although he attempted to against her consent. It was her testimony that both Manning and Shepard threatened her. She alleged that Shepard put his hands around her throat and said, in effect, that he would kill her if she did not allow him to accomplish his purpose. Manning, she said, threatened her and twisted her arm behind her back. After the assaults took place, Manning and Wiltsey drove one car and Shepard the other, returning to the city. The prosecutrix climbed over the seat to sit between the two boys. She testified she did this because she could not bear to remain on the rear seat with all its associations.
James Wiltsey, who was not prosecuted, testified for the State. He said that Manning arranged beforehand with Shepard and himself to be at the air strip with the idea that they join him in having intercourse with the prosecutrix. Wiltsey said he assumed she would do so voluntarily. Wiltsey testified that when Manning called Shepard and him to his car, the prosecutrix was sitting up and sobbing. When he got in the car and requested her to have intercourse with him she protested violently, whereupon he left the car. Manning then told Shepard he could threaten her but not to slap her or put any bruises upon her. Wiltsey said when Shepard got out of the car he informed them he had had intercourse *718 but when Wiltsey got in the car the second time the prosecutrix said she had not "given in" to any one. Wiltsey then bargained with her that if she would give in to his wishes he would see that she got home and that she thereupon agreed, but that he was not successful in his attempt to have intercourse with her. Wiltsey then alleged Manning got back in the car and assaulted her. He heard Manning threaten to slap her.
After the alleged events took place the two cars proceeded to a filling station. Defendant Shepard produced at the trial the station attendant, who testified that he saw all four of the parties but that the girl gave no indication of there being anything wrong. She did not appear to be upset, and said nothing to him.
The prosecutrix' mother testified that when her daughter got home she was crying and very upset. She informed her mother of what had happened. This was early Thursday morning. On Saturday morning the mother and her daughter went to a doctor and related the story. The police were then called and informed by the doctor that he had just examined a possible rape victim.
The doctor made only a superficial, visual inspection of the girl. His testimony indicated the possibility of recent intercourse or attempted intercourse. Another doctor made a careful examination and his testimony at least indicated the possibility of recent intercourse. A third doctor, who did not examine the prosecutrix, related facts which indicated the observations of the other two doctors could be explained by means other than intercourse. An examination of the panties worn by prosecutrix the night of the assault revealed the presence of male semen and a slight indication of blood.
Manning, the appellant, contends the evidence was insufficient to sustain the verdict. We do not agree. The accused did not take the stand in his own behalf and produced no witnesses. The state presented both the prosecutrix and the witness James Wiltsey whose testimony, if true, definitely implicated Manning, evidencing his guilt of the crime of assault with intent to commit rape. Wiltsey testified he had been made no promises by the state in exchange for his agreement to testify. The jury chose to believe such testimony and the doctors' testimony was at least not effective in overcoming that belief.
We are not entitled to substitute our judgment for that of the jury. Manning insists, however, that there was no evidence to substantiate the jury's finding but rather the testimony of the prosecutrix itself reveals that he did not intend to consummate intercourse regardless of the girl's lack of consent. The gravamen of the crime of assault with intent to commit rape is that the intent of the accused was to consummate the act regardless of resistance and want of consent. Dannelley v. State, 1920, 80 Fla. 773, 87 So. 44; Rye v. State, 1943, 153 Fla. 559, 15 So.2d 255.
According to the testimony of the prosecutrix, Manning did attempt to have intercourse with her when they first parked. The attempt was against her will and, according to her, failed due to her continued efforts of resistance. Subsequently, Manning again used force and threats to accomplish his purpose and was successful. We have only her testimony that he used force and threats the first time, but Wiltsey did testify that he was sitting in his car nearby and heard the girl on several occasions exclaim "no"; he also said that when he approached Manning's car he found her sitting up and sobbing. It appears that even if Manning did desist the first time he did not voluntarily desist without unusual resistance on the girl's part. Rye v. State, supra. The evidence of the subsequent, successful attempt was sufficient in itself to support the verdict and was strengthened by the testimony of the witness Wiltsey. Even if the evidence did *719 tend to sustain the conclusion that Manning's final act of intercourse was done with no resistance, defendant Manning confesses the rule to be that one may be guilty of assault to commit rape even though the female subsequently gives her consent and intercourse is achieved.
Manning also contends the conduct of the girl after the alleged events took place did not support her subsequent claim. He referred to the facts she made no outcry to the filling station attendant, did not appear unusually emotional to him, got on the front seat with her attackers, and did not report the attack for two days. We believe all those facts were satisfactorily explained by the State which alleged her fear of Manning influenced her actions. She testified he made various threats as to what would happen should she tell what had happened.
The defendant Manning also contends the verdict of the jury was inconsistent in that he was adjudged guilty but Shepard not guilty when all the evidence showed the two to be equally guilty, if guilty at all.
There was a slight difference in the evidence produced against the two accused men. Although both the prosecutrix and Wiltsey testified as to Manning's threats and force, only the prosecutrix testified that Shepard threatened her. Where several persons are jointly indicted and tried for an offense which may be committed by one person alone, the jury can by separate verdicts convict one or more and acquit the others, unless the evidence against all of the defendants is the same. "However, where there is the slightest difference in the testimony as between two jointly indicted, the fact that the evidence also involves the other to some extent will not relieve the one of culpability." 23 C.J.S., Criminal Law, § 1402(c).
Futhermore, we have previously ruled that a verdict in a criminal case will not be condemned for inconsistence. Goodwin v. State, 1946, 157 Fla. 751, 26 So.2d 898. A jury may by separate verdict acquit one and convict the other, where the two are jointly indicted. Each defendant is entitled to have his guilt or innocence determined by the jury without reference to the guilt of his codefendant. Harper v. State, 1945, 156 Fla. 331, 22 So.2d 766.
In the case of Taylor v. State, 1947, 159 Fla. 74, 31 So.2d 47, we held that there was no inconsistency warranting a reversal of a conviction of grand larceny because one jointly charged in the information was found guilty of petit larceny. The contention made was that the verdicts were inconsistent and this court said, 31 So.2d at page 49:
"* * * It is quite true that the two verdicts appearing in the record sustain this view, but Kelley apparently is satisfied therewith as he has not perfected an appeal here. The appellant cannot sustain his contentions of inconsistency of the verdicts because the Kelley verdict and judgment is not before us."
It is our conclusion that there was sufficient evidence to support the verdict of the jury against Manning. The difference in evidence against Manning and Shepard prevented the verdicts from being inconsistent, but even were we to hold them inconsistent, Manning is entitled to no reversal because of such inconsistency since this court has previously ruled on that issue adversely to him. Taylor v. State, supra.
The judgment and sentence appealed from is affirmed.
TERRELL, C.J., and HOBSON and DREW, JJ., concur.