313 So.2d 219

John **COPELAND**

v.

**STATE.**

**5 Div. 266.**

Court of Criminal Appeals of Alabama.

April 1, 1975.

Rehearing Denied April 22, 1975..

William J. Baxley, Atty. Gen., and Otis J. Goodwyn, Asst. Atty. Gen., for the State.

DeCARLO, Judge.

John Copeland was charged with rape, but was convicted of assault with intent to rape and sentenced to three years.

It was the prosecutrix's testimony that on Sunday night, April 7, 1974, about 10:00 o'clock, she returned to her dormitory room from the shower, dressed in a robe, shower shoes and cap. She entered

Walter L. Allen, Jr., Montgomery, for appellant.

her room and saw appellant and Willie Young talking to her roommate. Both men she had met before.

Willie offered the girls some beer. Her roommate refused but prosecutrix accepted a can, explaining she would give it to a friend. She asked the two if they would take her to get something to eat and John offered to let her drive his car. Before leaving, she went to a friend's room and slipped on jeans and a turtle neck sweater over her pajamas.

With prosecutrix driving appellant's car, the three left Tuskegee campus at 10:30 P.M. After purchasing food at a dairy bar, Willie asked to be dropped off at his home, and prosecutrix was directed where to drive. Arriving at Willie's house, Copeland suggested they go in and eat and then he would return her to the campus. Willie commented if she didn't want to be left alone, she should cut the motor off and come in. Upon entering the house, the door was locked, and she was told to sit down. After finishing her food, she said she was ready to go. Willie remarked they would take her after Copeland returned with more food and beer. When John returned, he and Willie said they wanted to have sex with her and would before she left. She refused.

They again made their requests for intercourse, and when she refused again, was thrown on the couch. She then tried to run and was caught at the door where Willie hit her in the stomach and called to Copeland, "Let's take her out and kill her." Prosecutrix pleaded she didn't want any trouble, "I just want to go."

She went to the kitchen and was crying. Both men entered and exposing their private parts, told her they wanted her to have oral sex. She replied she'd rather commit suicide than do that. After this incident, prosecutrix became ill. Appellant left the house and returned with some chicken which the two men ate. As the struggle resumed, prosecutrix's pants were jerked off, and she was forced to "model."

Finally prosecutrix pleaded, "Please don't do this to me because I could get pregnant." At that point Willie directed appellant to go to the car and get the condoms, however, before appellant could return, prosecutrix was taken into the bedroom. When Willie reached behind the bed for a rifle and placed it to her temple, prosecutrix got on the bed. While Willie proceeded to rape her, prosecutrix slapped, hollered and spat.

Upon appellant's return, Willie dressed and left the house. Prosecutrix was again directed to get on the bed, and when she refused, the rifle was shoved in her face. Again, just as with Willie, she continued to resist the rape.

After the attack, the phone rang and Copeland left the bedroom. While he was gone, she hurriedly dressed and ran to a neighboring house.

Mrs. Ida Mae Milbry, who lived about the third house from Willie, testified it was about 3:00 or 4:00 A.M., when prosecutrix, dressed in a short gown, knocked on her front door crying for help. "She said somebody raped her and said they were going to kill her." At that time, Mrs. Milbry told the girl to go around to the back and stay there until she called the police. She remained there until the police arrived.

Marvin Brooks, an officer of the Tuskegee Police Department, was on call on the morning of April 8, 1974. At the time Brooks was called to investigate he lived on Benson Avenue and arrived at Milbry's residence on Clemont Street in about a minute.

The prosecutrix indicated she had been raped and directed the officers to Willie's house. When John Copeland opened the door, he was placed under arrest for rape. The inside of the house looked to the officers as if the furniture was disarranged or a fight had taken place. On the floor they found jeans, a cap and a pair of loafers.

Later at 8:00 A.M., Officer Brooks returned with a search warrant and recovered a bag of marihuana under the mattress, a 410 shotgun loaded with two live shells behind the bed, a used prophylactic in the bathroom, and a stained sheet.

During the cross-examination, Mr. Brooks testified John Copeland was apprehended about 4:30 A.M., and he did not see any scratches on him. He said no clothing was taken from him and no close examination of his body was made. Further, he explained he was familiar with the smell of marihuana and he did not detect it, or the scent of·beer on the victim's breath.

Dr. Robert Williams, who examined prosecutrix at the hospital emergency room, stated she was hysterical and crying at the time. His examination revealed sexual intercourse had occurred, and there was bleeding from an abrasion in the vaginal area. In his judgment, it was fresh blood from the laceration. He testified she was admitted to the hospital and remained there in excess of twenty-four hours.

The testimony of John Copeland and Willie Young was substantially the same.

Appellant stated he and Willie Young had gone to visit the prosecutrix at the dorm, but at the time they arrived she was taking a shower. They waited in the room with her roommate until she returned, dressed in what he described as a night gown.

After a conversation concerning taking her to get something to eat, she asked if anybody had any money; that she needed to borrow a dollar. Willie Young said they had a pocket full, and he would give her the dollar. In their presence, she grabbed her jeans and slipped them on over her gown.

John Copeland stated the prosecutrix drove to the Dairy Bar and upon leaving, Willie said to "drop him off" at his home. Arriving at the house, Willie commented his wife was away, and he was going in, "smoke a couple" and go to bed. The prosecutrix said she wanted Copeland to wait while she had a couple. He agreed, and all three went into Willie's house. Appellant testified they all drank beer and smoked marihuana, and he left them for about fifteen minutes to get some chicken and more beer. When they learned she had modeled during the summer, they asked her to model for them. She then began to walk around in just her bikini pants.

Appellant recalled they talked with her about having sex with them, and prosecutrix remarked they were not going to have her. She began to pull on her jeans, but stopped and said, "You all promise to use a rubber." Both agreed, and he went to the car to get them.

In the meantime, prosecutrix had stripped and was in the bedroom with Willie. After their intercourse, Willie left in Copeland's car. When appellant entered the bedroom, prosecutrix was lying on the bed with nothing on but a smile. During the time they were "having sex", she showed him the gun.

Appellant admitted having sexual intercourse with prosecutrix, but insisted it was with her consent, and no one hit, strangled or threatened her.

I

The sole question raised grew out of this instruction to the jury:

"As I said to you earlier this indictment of rape carries with it two lesser offenses, that of an assault with intent to rape and an assault and battery.

"To justify conviction of an assault with intent to rape the evidence must be or show such act of conduct of the accused that it would leave no reasonable doubt of his conduct and his intention to gratify his lustful desire against the consent of the female and notwithstanding resist-

ance by her. If, after the assault but before penetration the female yields her consent or discontinues such resistance as is essential in the conviction of rape the offense of assault with intent to rape is committed since such consent or cessation of resistance does not undo what has been previously done."

Although no objection was interposed at the time, appellant now complains the trial judge wrongfully denied his motion for a new trial. He contends that under the evidence a jury could only bring in one of two verdicts: guilty of rape or not guilty, and there was no evidence on which to base a verdict of assault with intent to rape. Counsel insists the jury's action was contrary to the evidence and represented a compromise verdict.

The question presented is this: May a defendant be convicted of assault with intent to rape, where after the assault, and before penetration the act of sexual intercourse is consummated by consent or failure to make the resistance required by law?

"We have intimations that a consent given during any part of the intercourse will prevent its being rape. Certainly a consent after the assault, and before the penetration, will have this effect. But as to the other question, the true view is believed to be that when the offence has been made complete by penetration, no remission by the woman or consent from her, however quickly following, can avail . . . ."

—2 Bishop on Criminal Law, § 1122(6) (Ninth Edition 1923).

". . . if after the assault and before penetration the woman yields her consent, the offence of assault with intent to ravish is committed; for the consent does not undo what was done before . . . ."

—1 Bishop on Criminal Law, § 766 (Ninth Edition 1923).

■ Under this principle a conviction of assault with intent to commit rape can only be justified when the evidence shows such acts and conduct on the part of the accused as would leave no reasonable doubt of his intention to gratify his lustful desire against the consent of the female, notwithstanding resistance on her part. Duckett v. State, 37 Ala.App. 640, 73 So.2d 773.

We have examined the facts, and it is our judgment there appears to be sufficient evidence to warrant the judge's instruction.

■ Under *Duckett*, supra, we are constrained to hold the jury was correct in finding appellant guilty of assault with intent to rape.

We did not find any error in our search of the record.

Affirmed.

All the Judges concur.

CATES, P. J., concurs with opinion.

CATES, Presiding Judge (concurring).

I believe that the *Duckett* rule should not be overruled. It may verge on the metaphysical, but is is not chimerical.

In sexual assaults upon females over the age of consent there are at least three conceivable offenses:

1. Rape; or

2. assault with intent to ravish; or

3. an attempt to commit an assault with intent to ravish.

See *Morris*, 32 Ala.App. 278, 25 So.2d 54; compare Brobston, Case Note, 6 Ala.Law Rev. 93.

In *Jacobi,* 133 Ala. 1, 32 So. 158, we find this remark explaining the refusal of defendant's Charge 2:

" * * * It is not essential to the crime of assault with intent to ravish that the perpetrator should have intended that his accomplished act should be rape. * * *"

Glanville Williams in his Criminal Law, The General Part (2d ed.) writes in § 23. Conditional Intention:

"A conditional intention is capable of ranking as intention for legal purposes. Thus, it is no defence to an apparent burglar that his intention was merely to steal a certain paper if it should happen to be there. * * * The American Law Institute states the principle in the following words:

" 'When a particular purpose is an element of offence, the element is established although such purpose is conditional, unless the condition negatives the harm or evil sought to be prevented by the law defining the offence.'
"The illustration given of the concluding qualification is where a man assaults a woman intending to accomplish sexual intercourse with her if she consents: this is not an assault with intent to rape. If, on the other hand, his purpose was to overcome her will if she resisted, he would be guilty of this crime."

See also Manning v. State, Fla., 93 So.2d 716.

Perhaps the jury was here exhibiting leniency. However, no instruction was tendered in the trial below as to the "all or nothing" theory. I do not consider that a motion for new trial is the proper way to raise the question without explaining why the request was not made before the jury retired. See *Prince,* 50 Ala.App. 644, 282 So.2d 83.

*Woodson,* 170 Ala. 87, 54 So. 191, has certain limits under recent decisions.

However, it controls here. The evidence is undisputed that there was carnal copulation between the parties. There were left only the questions of the appellant's intent and his intensity to persist either in strenuous seduction or rape. Classically this was a jury decision.