STATE OF IOWA v. JEROME V. BROWN, Appellant.

130    57
140    644

**Criminal law:** CHANGE OF VENUE: PREJUDICE. The court's discretion in refusing a change of venue on the ground of prejudice through the circulation of newspaper accounts of the crime, will not be interfered with on appeal where such reports were rather narrative than inflamatory and the affidavits in support of the change fail to show such prejudice as to indicate the impossibility of a fair trial in that court.

Challenge of jurors: COMPETENCY. Where a juror is not shown to have formed or expressed such an opinion of the guilt or innocence of a defendant as to prevent him from rendering a true verdict on the evidence, the courts discretion in over-ruling a challenge will not be interfered with on appeal.

Aiding and abetting: EVIDENCE. On a prosecution for aiding and abetting the commission of a crime by another, the' acts and declarations of the other tending to show his guilt were competent, where there was other evidence connecting the defendant with the crime charged.

Aiding and abetting: SUFFICIENCY OF EVIDENCE. On a prosecution for assault with intent to maim and disfigure, the evidence is reviewed and held sufficient to sustain a conviction.

New trial: ABSENT WITNESS. Failure of the sheriff to subpœna a witness for defendant, whose testimony was not pointed out as material to the defense, and so far. as it may have had a bearing on the conduct of an accomplice it could not have affected the result, was not ground for a new trial.

*Appeal from Butler District Court.*— HON. CLIFFORD P. SMITH, Judge.

WEDNESDAY, MARCH 7, 1906.

DEFENDANT was convicted under an indictment charging him with the crime of assault with intent to maim and disfigure, and, on conviction, was sentenced to imprisonment at hard labor in the penitentiary for a period of four years. From this conviction he appeals.— *Affirmed.*

*C. M. Greene* and *G. E. Greene,* for appellant.

*Chas. W. Mullan,* Attorney General, and *Lawrence De Graff,* Assistant Attorney General, for the State.

McCLAIN, C. J.— The prosecution relied on evidence which, as it claims, tended to show that Mrs. Parnie Ramsey, who resided with her four infant children about three-quarters of a mile from the town of Clarksville, was called to the door of her house between ten and eleven o'clock on

the evening of July 30, 1904, by some one who represented that he had a message for her, and who, when she opened the door and screen at his solicitation, threw some caustic liquid into her face, causing severe and permanent injuries; that the person who committed the assault was one Hugh Wheeler; and that this defendant was an accessory before the fact, aiding and abetting in the commission of the crime by said Wheeler, though not present, and, under the provisions of Code, section 5299, punishable as principal.

I. A motion for change of venue was made on behalf of the defendant at the proper time, based on the ground that there was hostility and prejudice against defendant 1. CRIMINAL LAW: throughout the county, resulting from the wide- change of venue: preju- spread circulation of newspaper accounts of dice. the crime, charging the defendant with its commission, and from the publicity given to the evidence on the previous trial of Hugh Wheeler for the same crime, on which trial said Wheeler had been convicted. The newspaper accounts of the crime charging defendant and Wheeler with the commission thereof, as set out in the record, were not in any way inflammatory in their nature, otherwise than as a mere narrative of such an outrage was calculated to arouse public interest and indignation against those who might be found to have been guilty thereof; and the affidavits in support of the motion do not indicate any such excitement or prejudice as against this defendant as to show that he could not have a fair trial in the county. The statements in these affidavits are largely by way of conclusions of the affiants, and are fully met by counter-affidavits on the part of the State. We see no reason for interfering with the exercise of discretion on the part of the trial court in refusing to grant a change of venue.

II. The overruling by the court of defendant's challenges to jurors is complained of. As to certain jurors examined for cause the record shows an impression that defendant was connected with the commission of the crime,

and a feeling that, unless it appeared from the evidence that he was not so connected, they would not be inclined to let him off; but as to none of them was there any showing of the formation or expression of such an opinion as to guilt or innocence of the prisoner as would prevent him from rendering a true verdict on the evidence submitted on the trial, as is required by Code, section 5360, to constitute a ground for challenge for cause on that account. This case clearly falls within the rule, often announced, that the discretion of the trial court in rulings upon challenges for cause will not be interfered with unless a clear abuse of discretion is shown. *State v. Hudson,* 110 Iowa, 663; *State v. Bone,* 114 Iowa, 537; *State v. Munchrath,* 78 Iowa, 273; *State v. Lawrence,* 38 Iowa, 54; *State v. Bruce,* 48 Iowa, 534; *State v. Brady,* 100 Iowa, 194. The court might properly take into account the juror's conduct, demeanor, and bearing in court in determining whether, in view of his statements in answer to questions propounded to him, he was qualified to serve. *State v. Crofford,* 121 Iowa, 395. There is not such showing in the record as to bring this case within the opinions of the court in the case last cited, and in *State v. John,* 124 Iowa, 230. We find no error in the ruling of the court as to the qualification of jurors.

2. Challenge of jurors: competency.

III. Error is assigned on the admission, over defendant's objection, of evidence tending to show the acts and declarations of Wheeler for the purpose of establishing the commission by him of the assault on Mrs. Ramsey, and counsel rely upon what was said by this court in reversing the conviction of Wheeler for this same assault. See *State v. Wheeler,* 129 Iowa 100. But in that case the record was not the same as in this, and complaint was made of the admission of evidence tending to show a motive on the part of the present defendant, Brown, to cause injury to Mrs. Ramsey, without any evidence that Brown procured Wheeler to carry out any

3. Aiding and abetting: evidence.

hostile purpose of Brown toward Mrs. Ramsey. The principal, if not the only, ground for reversal in that case, was the giving of an instruction which assumed that there was such evidence, whereas the record was barren of competent evidence on that point. But in the case now before us the question was not as to conspiracy, but as to whether defendant induced or procured Wheeler to commit the crime. On that issue it was, of course, competent to prove the actual commission of the offense by Wheeler, and his acts and declarations tending to show guilt might be proven, provided there was other evidence tending to connect the defendant with the crime as instigator or accessory before the fact. If there was evidence tending to connect defendant with the commission of the crime by inducing or assisting Wheeler, to commit it, then any evidence showing its commission by Wheeler was competent as laying the foundation for proof of the defendant's complicity in the crime as committed. The State did not attempt to prove defendant's connection with the crime by the declarations of Wheeler. The case is wholly unlike that of *State v. Walker,* 124 Iowa, 414, in which there was a reversal on account of the admission of declarations of the person who, it was claimed, had procured the defendant in that case to commit the offense, in the absence of any competent evidence that, at the time such declarations were made, any conspiracy or arrangement had been entered into between such person and the defendant for the commission of the crime.

In the case before us the questions for determination were whether the crime had been committed by Wheeler, and whether such commission had been procured or aided by defendant. The commission of the crime by Wheeler was an essential element in the case, and any evidence tending to prove such commission was competent. It matters not, for the purpose of this case, whether defendant knew of any acts of Wheeler tending to indicate a purpose on his part to commit the assault on Mrs. Ramsey or not, providing there

was sufficient evidence to go to the jury on the question whether, at some time prior to the actual commission of the offense by Wheeler, this defendant instigated him to commit it, or aided, abetted, or assisted him in his purpose to commit it, having a knowledge at the time of such aiding, abetting, or assisting, as to his purpose.

IV.   The principal contention for the defendant is, however, that the evidence was not sufficient to show defendant's connection with the commission of the crime by

4. AIDING AND
ABETTING:
sufficiency of
evidence.

Wheeler, and that the court therefore erred in overruling defendant's motion for new trial on that ground.   There is ample evidence in the case to establish Wheeler's guilt, and the only question to which we need direct our attention is as to the sufficiency of the evidence relied on as tending to show defendant's connection with the crime to take the case to the jury.   It may be conceded that the evidence in this respect is not conclusive and is largely circumstantial; but, in the very nature of things, conclusive evidence could not be expected.   It would not be reasonable to suppose that defendant should proclaim to the world his connection with Wheeler's acts, nor that Wheeler would be willing to admit his own guilt for the purpose of convicting his associate.   We are justified in looking into the conduct of the defendant with the purpose of ascertaining whether there was anything in his statements or conduct from which the jury might reasonably have found that he instigated, procured, or assisted Wheeler in the commission of the crime.

The evidence in the record fails to disclose any motive whatever on the part of Wheeler for inflicting injury on Mrs. Ramsey on his own account; but it appears that defendant, who became a widower about the time of the death of Mrs. Ramsey's husband, the two families before that time having been neighbors and intimate, defendant became a suitor for Mrs. Ramsey's hand in marriage, and after having been at length forbidden by her to come to her house

or otherwise make approaches to her, had used language showing a feeling of desperation on his part which he indicated might result in violence, especially if he should find that she contemplated marriage with anyone else. The last interview between them was about a month before the assault upon her was committed. The evidence as to these facts was competent to go to the jury as showing a motive on the part of defendant to cause injury to Mrs. Ramsey.

It further appears that Wheeler was separated from his wife, who was temporarily staying with Miss Iva Rains, and that he entertained feelings of enmity toward Miss Rains on account of her friendliness for his wife, and because he anticipated that she would be a witness for the wife in a proceeding by her against Wheeler for a divorce. On the 28th of July, defendant called upon Miss Rains and told her of some plot against her into which she would fall if no one warned her of it, and he promised to warn her if she was going to get into trouble. In this connection defendant made the significant statement that " he saw Wheeler's finish." These statements of defendant might well be regarded by the jury as indicating knowledge that Wheeler would be concerned in some trouble which would bring misfortune to him. But, of course, in themselves they do not prove that defendant had reference to an attempt by Wheeler to do injury to Mrs. Ramsey, rather than to some anticipated trouble between Wheeler and Miss Rains.

It is shown by the testimony of several witnesses that defendant and Wheeler had been intimately associated together for some time prior to the commission of this crime, and that defendant was several times, not long before that occurrence, at Wheeler's lodging rooms in a business block in Clarksville spoken of as the " Leete Building "; that they were seen together in apparently confidential conversation at two or three different places on the day on which the crime was committed and within a few days prior thereto; and that between nine and ten o'clock of that evening

Wheeler was at the corner of the Leete Building when Brown drove up in a buggy and hitched his horse, after which they engaged in conversation. Later in the same evening, and after the time when the crime was committed, Wheeler and defendant were again together, when the father of Mrs. Ramsey came to town to secure a doctor, and was immediately inquired of by Wheeler as to what was the matter, and although, for some reason, he concealed from Wheeler the nature of his errand, Wheeler very soon afterward made a statement to another person that some one had thrown lye in Mrs. Ramsey's face.

But more significant than any other circumstance is the fact, which the jury might well have found from the evidence, that Wheeler went from town to the place where the crime was committed and returned with defendant's horse and buggy, and that soon afterward defendant, with another person not recognized, took the horse and buggy to the place where they were usually kept, and, unfastening the horse from the buggy, tied it to the fence, and left it stand there all night with the harness on, coming again for it next morning. To one witness he subsequently declared he had lent his horse to Wheeler the evening the crime was committed, while to the father of Mrs. Ramsey he said that if Wheeler had his horse on that night he stole it.

Now, we think that from these circumstances the jury may well have believed, as they undoubtedly did, that defendant not only knew beforehand of Wheeler's purpose to make an assault upon Mrs. Ramsey, but also either instigated or procured Wheeler to commit the crime, or aided and assisted him at least to the extent of furnishing him the horse and buggy in which he went to and returned from the place of its commission. It is true that none of these circumstances, standing alone, might be inconsistent with defendant's innocence; but we cannot believe that, taken together, they do not furnish sufficient support for the verdict. We have not thought it necessary to set out the testimony of the

defendant in which he denied or sought to explain away the testimony of the State's witnesses as to these various circumstances, nor to refer to the testimony of witnesses called by him to impeach the witnesses for the prosecution. The credibility of the witnesses was for the jury, and it is not for us to determine the sufficiency of defendant's explanation.

V. Another ground relied on by defendant in his motion for new trial was the misconduct of the sheriff in failing to serve a subpœna issued on defendant's behalf for a witness who had previously been subpœnaed for the State, but who was not present at the trial.

5. NEW TRIAL: absent witness.

The showing with reference to this witness was that he would have testified with reference to some conversation with Wheeler in regard to the house in which Mrs. Ramsey lived. It is not pointed out how this testimony could have been in any way material as to defendant's connection with the crime, and, so far as it would have had any bearing on Wheeler's conduct, it could not have affected the result; for, as already indicated, we find that Wheeler's guilt was made out without the slightest room for doubt.

Appellee's motion to strike appellant's amendment to the abstract, which has been submitted with the case, is overruled.

Finding no error in the record, and that there was sufficient evidence to take the case to the jury, the judgment of the trial court is *affirmed*.