STATE OF MAINE

*vs.*

LAWRENCE E. BERUBE

Androscoggin.   Opinion, November 28, 1962.

*Gaston M. Dumais, County Attorney,* for the State.

*Roscoe H. Fales,* for the Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

SIDDALL, J.   On exceptions.   Respondent was indicted for the crime of robbery.   He entered a plea of not guilty and after trial a verdict of guilty was returned.   At the conclusion of the evidence, respondent's counsel moved for a directed verdict, and the motion was denied by the court. After the charge, respondent's counsel asked for the following instruction: "Berube had no obligation to interfere even if not in fear, and even if a compatriot [companion] of Esman."   The court refused to give the requested instruction.

The case comes here on exceptions to the refusal of the court to grant respondent's motion for a directed verdict and to give the requested instruction.

In the instant case the actual perpetrator of the assault and robbery was Esman. The crime took place in the presence of the respondent in an apartment of an acquaintance. He was friendly with Esman and was Esman's companion that same evening before and after the commission of the crime.

The person actually perpetrating a crime is ordinarily termed a principal in the first degree, and one present and aiding and abetting is termed a principal in the second degree. The law is well settled in this state that all persons who are either actually or constructively present, aiding, abetting, and assisting a person to commit a felony are principals and may be indicted as such. *State* v. *Burbank,* 156 Me. 269, 279, 163 A. (2nd) 639; *State* v. *Rainey,* 149 Me. 92, 97, 99 A (2nd) 78; *State* v. *Saba et al.,* 139 Me. 153, 156, 27 A. (2nd) 813; *State* v. *Flaherty,* 128 Me. 141, 145, 146 A. 7.

However, something more than mere presence must be proved in order to convict as a principal a person who is not the actual perpetrator of the crime. It is sufficient if such person aided, abetted, assisted, advised or encouraged another in the commission of the crime, or was present for such purpose to the knowledge of the perpetrator. Likewise, any concerted participation in a general felonious plan, together with actual or constructive presence, is sufficient to make a person a principal as to any crime committed in execution of the plan. Our court in the case of *State* v. *Burbank, supra,* had occasion to discuss some of the elements constituting aiding and abetting the commission of a crime. On page 279 of that case the court said:

"If she  the respondent  is guilty of manslaughter, it must be because the evidence is such that she is

placed in the category of a principal to the commission of a felony as there is no proof of her physical engagement in the act which caused the injuries resulting in death.

> 'A principal of the second degree is one who is present lending his countenance, encouragement or other mental aid while another does the act.' *Bishop's Criminal Law*, Vol. 1, Sec. 648 (3).

In order for one to be a principal, it is necessary for him to be present, either actually or constructively.

Constructive presence is sufficient to satisfy the element of 'presence' in a charge of aiding and abetting in constituting one a principal. *English v. Matowitz*, 72 N.E. (2nd) 898 (Ohio).

> 'It is settled law that all who are present (either actually or constructively) at the place of a crime and are either aiding, abetting, assisting, or advising in its commission, or are present for such purpose, to the knowledge of the actual perpetrator, are principals and are equally guilty.' *State v. Holland*, 67 S.E. (2nd) 272-274 (N.C.).

> 'To constitute one an aider and abettor in the commission of a crime, he must be actually or constructively present at the time of its commission and render assistance or encouragement to the perpetrator.' *Howard v. Commonwealth*, 200 S.W. (2nd) 148-150 (Ky.)"

The general rule is that there is no duty on the part of a bystander to prevent the commission of a crime. However, if he fails to do so, and particularly when he is a friend or companion of the actual perpetrator, such failure may be considered, with all other circumstances of the case, in determining whether he aided or abetted the commission of the crime. The conduct of the respondent before and

after the commission of the crime, including companionship with the actual perpetrator, may likewise be considered by the jury as bearing on the respondent's guilt.

> "While it is true that the mere presence of a person at the scene of a crime is insufficient to constitute him a principal therein, in the absence of anything in his conduct showing a design to encourage, incite, aid, abet or assist in the crime, the trier of the facts may consider failure of such person to oppose the commission of the crime in connection with other circumstances and conclude therefrom that he assented to the commission of the crime, lent his countenance and approval thereto and thereby aided and abetted it. . . .

> It has also been held that the presence of one at the commission of a felony and companionship with another engaged therein, and a course of conduct before and after the offense, are circumstances which may be considered in determining whether aiding and abetting may be inferred." *Mobley et al.* v. *State* (Ind.), 85 N. E. (2nd) 489, 492, 493.

> "We have repeatedly held that knowledge or intent is seldom capable of direct proof. It is usually inferred from the proven surrounding circumstances. *State v. Van,* Iowa, 2 N.W. 2d. 748, 749, and citations. Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed. 22 C.J.S., Criminal Law, p. 161, Sec. 88b; *State v. King,* 198 Iowa, 325, 337, 197 N.W. 981; *State v. Brown,* 130 Iowa 57, 62, 64, 106 N.W. 379. A common purpose among two or more persons to commit a crime need not be shown by positive evidence but may be inferred from the circumstances surrounding the act and from defendant's conduct subsequent thereto. 22 C.J.S., Criminal Law, p. 156, Sec. 87a; *State v. Carlson,* 203 Iowa 90, 93, 212 N.W. 312."

> *State* v. *Kneedy* (Iowa), 3 N. W. (2nd) 611.
> "The applicable rule stated in 16 C.J. 133, as quoted

and approved in *State v. Kowertz*, 317 Mo. 426, 297 S.W. 358, 361, is as follows: 'The presence of one at the commission of a felony by another is evidence to be considered in determining whether or not he was guilty of aiding and abetting. And it has also been held that presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred.' See also, *State v. Moulder et al.*, Mo. Sup. 57 S.W. 2d 1064."
*State* v. *Corbin* (Mo.), 186 S. W. (2nd) 469, 471.

See also *People* v. *Mummert* (Cal), 135 P. (2nd) 665, 668; *State* v. *Bishop* (Mo.), 296 S. W. 147; *Callies* v. *State* (Neb.), 61 N. W. (2nd) 370, 374-375; *State* v. *Defalco* (N. J.), 74 A. (2nd) 338, 340: Wharton's Criminal Law, 12th Ed. Vol. 1, Sec. 246; 22 C. J. S. Criminal Law, Sec. 88 (2nd).

Having in mind these principles of law we take up first the respondent's exception to the refusal of the court to instruct the jury that "Berube had no obligation to interfere even if not in fear, and even if a compatriot [companion] of Esman." It is noted that no exceptions were taken to any part of the charge of the presiding justice.

The court is not required to give a requested instruction, even if it states the law correctly, if it is misleading or if it has already been covered in the charge. *Desmond pro ami* v. *Wilson*, 143 Me. 262, 268, 60 A. (2nd) 782.

The requested instruction did not go far enough. Without qualification, it was misleading. The jury was entitled to evaluate the testimony of the respondent, and to determine whether the failure on his part to do more than he did to prevent the crime was due to fear of Esman, or whether, taking all of the circumstances into consideration, he participated in the crime by aiding and abetting.

The respondent calls attention to certain isolated portions

of the charge which he claims conveyed to the jury the incorrect impression of the pertinent law relating to the requested instruction. The correctness of a charge is to be determined from the entire charge and not from isolated extracts from it. *Desmond pro ami* v. *Wilson, supra.*

A careful reading of the entire charge satisfies us that it contains in substance the applicable law relating to the requested instruction. The court repeatedly instructed the jury that mere presence at the time of the commission of the crime was not sufficient to justify a conviction. We are satisfied that there could be no misunderstanding on the part of the jury that it was to find from all of the circumstances, including those which followed the crime, whether the respondent was put in fear or whether he aided and abetted Esman in the commission of the crime. This exception is overruled.

We now take up respondent's exception to the refusal of the presiding justice to direct a verdict for the respondent.

This exception raises the simple question whether, in view of all the evidence, the jury was warranted in believing beyond a reasonable doubt that the respondent was guilty of the crime charged.

The evidence discloses that the respondent and Esman were together in the late afternoon of the date of the crime. They met Fogg and drank beer with him. Fogg testified that the respondent told him they were going to their girl friend's apartment and invited him to go. On the other hand the respondent testified that Fogg asked him if he knew of a place where they could drink and that the respondent suggested the house of an acquaintance. In any event, Fogg bought a quantity of beer and they proceeded to the apartment. They were admitted and while there Fogg was assaulted and robbed by Esman. Fogg testified that before the assault and robbery he left the room for a

few moments. Upon his return Esman and the respondent were engaged in whispered conversation in the next room. The conversation continued for several minutes and immediately upon their return to the room Esman assaulted Fogg and robbed him of $64.00. The respondent denied the whispered conversation. The assault was a serious one requiring Fogg's hospitalization for a week. After the robbery the respondent and Esman left the apartment and remained together for several hours visiting some seven or eight different establishments and drinking beer together. Miss Yonuss, who occupied the apartment, testified that just before Esman and the respondent left her apartment one said to the other "Give her some money, she'll be quiet, she won't say anything." They were still together when picked up by Lewiston police officers after nine o'clock that evening. One of the police officers testified that when Esman and the respondent saw the officers they made a rapid turn away from them, the respondent "going as fast as he could without falling on his face with the crutches, really hopping along." The respondent claims that he was in fear of bodily injury at the time of the commission of the crime, and that during the evening he was obliged to accompany Esman under threats. He also testified that he was still under threats when spotted by the police.

The interpretation of disputed testimony was for the jury. The jury could have found that there was a whispered conversation between Esman and the respondent, followed immediately by the assault and robbery, and that this evidence was significant as bearing on the respondent's culpability. It could have found that the conduct of the respondent at the time of the commission of the crime, and his association with Esman thereafter, was not through fear of Esman but voluntary on the respondent's part; that he attempted to evade being picked up by the police, and that he failed to inform the police, upon being questioned, that he was in Esman's company under threats of injury if

he attempted to leave. From all of the circumstances of the case the jury could have found that the respondent was not an innocent bystander, but was lending his countenance and encouragement to the commission of the crime and thereby aiding and abetting therein. We are satisfied that there was ample evidence to justify the jury in finding beyond a reasonable doubt the guilt of the respondent.

The entry will be

*Exceptions overruled.*