STATE OF MAINE
*vs.*
JOSEPH A. DUPUIS

Androscoggin.    Opinion, March 13, 1963

*Gaston M. Dumais, County Atty.,*
*Laurier T. Raymond, Jr., Asst. County Atty.,* for State.

*Edward J. Beauchamp,* for Defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, JJ.   MARDEN, J., did not sit.

WEBBER, J. The respondent was tried and convicted of the crime of forgery. At the close of all the evidence respondent addressed a motion to the court for a directed verdict, which motion was denied. After the witnesses for the State had completed their testimony and the State had rested, the presiding justice recalled one of these witnesses and over the respondent's objection made further inquiry of the witnesses which elicited certain answers. The respondent now seeks to attack these adverse rulings by way of a bill of exceptions.

The respondent's first exception is addressed to the claim of error in failure to direct a verdict of not guilty. The evidence discloses that four persons including the respondent engaged in concerted activities to forge and utter a check; that the respondent participated in an initial plan that one Sherman would prepare the check and respondent would cash it; that all four were together in the respondent's apartment when Sherman prepared the check although the respondent may have been in another room during part or all of the time; that the respondent entered into a common agreement to change the plan and send one Polley to utter the forged check; that the respondent supplied Polley with his Social Security and Selective Service cards to be used as an aid in uttering the check; and that after the forged check had been successfully cashed, the respondent joined in dividing and sharing the spoils.

The respondent appears to entertain the theory that if Sherman in fact prepared the check and forged the signature thereon, the respondent would thereby be relieved from criminal responsibility as a principal. One may be guilty as a principal if he is actually or constructively present, aiding, abetting and assisting a person to commit a felony. *State* v. *Burbank,* 156 Me. 269; *State* v. *Rainey,* 149 Me. 92; *State* v. *Berube,* 158 Me. 433. In *Burbank* the respondent was deemed constructively present although in

another room from that in which the physical acts constituting the felony were being performed. In *State* v. *Flaherty*, 128 Me. 141, the respondent was convicted of rape where he was present, aiding and abetting, even though he himself had no carnal intercourse with the prosecutrix. In the instant case the jury could properly conclude that the respondent was constructively present and participating as a principal in the crime of forgery.

R. S., Chap. 133, Sec. 1 as amended requires that a specific intent to defraud must be affirmatively shown as an element of the crime of forgery. As was stated in *State* v. *Berube, supra,* knowledge or intent is seldom capable of direct proof but may be inferred from the proven surrounding circumstances and in particular from the presence, companionship and conduct of the respondent before and after the offense is committed. Applying this test to the evidence before us, there was ample support for a jury finding of the requisite criminal intent. There being no occasion for the direction of a verdict, the first exception must be overruled.

The second exception seeks to attack the conduct of the presiding justice in recalling a witness for examination after the State had rested its case. This the court did upon his own motion and over objection by the respondent. Mr. Sherman, testifying for the State, had during his direct and cross-examination by counsel described the respondent's participation with him in the activities which produced the forgery. In his answers the witness without objection had been permitted to state his own conclusions as to what the respondent wanted to do or was going to do in connection with the forged check and in particular as to what the "arrangement" was between them. Neither counsel had made any effort to restrict the witness to conversations with and statements by the respondent which might or might not justify the conclusions drawn by the

witness. The inquiry by the presiding justice on recall sought to elicit from the witness the basis, if any, for his stated conclusions. In particular he desired to ascertain what if anything the respondent had said to the witness. The questions asked were entirely impartial and were clearly designed only to ascertain the truth. It was entirely within the sound discretion of the presiding justice to participate in the conduct of the trial in this manner and to this extent. He was more than a mere umpire or referee. As was stated in *State* v. *Dipietrantonio,* 152 Me. 41, 48:

"A justice who presides over a jury trial occupies a place of great responsibility. He must not only see that a dignified order is maintained in the court room and that the procedure is according to rule and statute, but also that the rights of all parties are protected. In a civil case he must hold the 'scales' evenly. In a criminal case he must protect the constitutional rights of a respondent, and at the same time remember that the public is also entitled to protection. A trial in a court of justice is not arranged for the purpose of testing the respective abilities of the attorneys involved upon the one side or the other. The purpose of a trial is to determine what is the truth, and what is justice under the facts and the law, and to that end the trial judge is not only permitted but it is his duty to participate directly in the trial to facilitate its orderly progress, in order to elicit the truth and to administer justice. His remarks or conduct in performing this duty will not constitute error if they are such as do not discriminate against or prejudice either party in a civil proceeding, or (to) prejudice the constitutional rights of an accused in a criminal case. * * * It is always permissible for the court, and, if it appears necessary for him to do so, it is his duty to propound to witnesses such questions as he deems necessary to bring out any relevant and material evidence, without regard to its effect, whether beneficial to one party or the other. * * * The

> examination of a witness by the presiding judge must be conducted without prejudice to an accused, and in such a manner as to impress the jury that the judge is impartial and is not indicating his opinion on the facts."

In the instant case the interrogation by the presiding justice fell well within both the letter and the spirit of the guiding principles above set forth. This exception cannot be sustained.

The third exception is general in its nature and seeks to attack "all the rulings of the presiding justice that were adverse to the respondent." An exception in this form which fails to specify the particular claim of error or the manner in which a specific ruling is claimed to have aggrieved or been prejudicial to the respondent raises no issues of law for determination here. This exception sounds in part in appeal but no appeal was taken in this case. Matters which might properly have been raised by appeal, however, have been fully considered above under the first exception. The third exception must be dismissed.

The entry will be

*Exceptions 1 and 2 overruled.*

*Exception 3 dismissed.*

*Judgment for the State.*