STATE of Maine

v.

**John MIMMOVICH.**

STATE of Maine

v.

**Harold J. FERRAR.**

Supreme Judicial Court of Maine.

Dec. 8, 1971.

---

Joseph E. Brennan, County Atty., Portland, for plaintiff.

Jack L. Schwartz, Portland, for John Mimmovich.

Kenneth E. Snitger, Portland, for Harold J. Ferrar.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE and ARCHIBALD, JJ.

WEATHERBEE, Justice.

These two defendants and another young man, Johnson, were convicted after jury trial of the offense of breaking, entering and larceny in the nighttime. The two Defendants, represented by court appointed counsel, have appealed the judgments against them.

Testimony revealed that sometime between 10:45 and 11:30 P.M. on January 7, 1970 a Portland lady, who was driving down Congress Street in that city, was passing a pool hall, owned by a friend, which was located on the first floor of a building numbered 225 Congress Street, sometimes known as the Munjoy News building, when she glanced into the window and saw activity there which attracted her attention. She stopped and backed up until she was opposite the building. Although the pool hall was apparently closed, lights in the front windows enabled her to see that there was a young man inside who was shaking a machine of some sort. As she watched she noticed a thin boy in dark clothing standing in front of the building who then walked away toward Washington Avenue. Then she saw that there was also a third boy, inside the building. (She later, at trial, identified Defendant Ferrar as the person who was shaking the machine.) The lady then drove to the home of a friend on Washington Avenue and, by telephone, told the proprietor what she had observed.

At approximately midnight Officer Dennis was patrolling this area on foot when he received a message on his walkie-talkie radio from the police dispatcher to the effect that an unknown person had telephoned the police station reporting that there was a break in progress in the Munjoy News building. The officer was then five buildings away from the Munjoy News building and he immediately ran to an alleyway to the rear of that building where he discovered that a rear window had been broken and the glass removed. Metal bars which had been affixed over the outside of the window had been torn from the wood casing and spread apart sufficiently wide to permit the entrance of a person. The officer had checked this same window and metal bars an hour and a half earlier and had found them intact.

Officer Dennis ran to the front of the building on Congress Street and saw the police wagon approaching with other officers. He then ran to an alley on the other side of the building and to a space between the rear of the Munjoy News building and the rear of a building fronting on Montgomery Street.

At this point he heard low male voices coming from the porch on the second floor of the other building. Officer Dennis entered this other building and went to the fourth floor, checking the porches on each floor as he ascended.

Hearing footsteps on the roof, Dennis climbed through a skylight to the flat tar and gravel roof and glimpsed two persons moving away into the darkness. He called to them to halt and then to come forward. As no one appeared he started to follow them and at once saw the Defendant Johnson hiding behind a chimney. After telling Johnson he was under arrest and taking hold of his collar, the officer moved with Johnson across the roof where he found the Defendant Mimmovich lying face down in the darkness. The two men were handcuffed and, when another officer arrived, they were frisked for weapons and Officer Dennis determined that Johnson had a large amount of coins in his pocket but the

officer did not remove them. The two officers then looked further and found the Defendant Ferrar hiding behind a chimney. He was arrested and frisked and also found to have a large quantity of change. The three Defendants were taken to the police station where a search revealed that Johnson had $12.20 in money in change in his pocket and Ferrar had $10.28 in small change. Mimmovich had no money. Although the night was very cold the three Defendants were lightly dressed.

While descending to the street level, the officers found in the third floor hallway, behind a piece of plywood, a pan containing $23.25 in quarters. In the second floor hallway they found a hammer. The pan was one which had been attached to the pool table to receive coins. The hammer had been kept in the pool room.

Examination of the pool room revealed that entrance had been gained through the broken window, two vending machines and a cigarette machine had been ripped open, a coin operated pool table had had its coin box torn from the table and broken open, and $40.00 to $50.00 in change had been stolen.

The Defendants' appeals raise several issues.

*Search and Seizure.*

■ The Defendants moved at trial, to suppress evidence concerning the coins which were found on the persons of Johnson and Ferrar, contending that the officers' arrests of the Defendants were made without probable cause and were therefore unlawful and that the arrests furnished no justification for the searches which followed.

We discussed the standard for determining the presence of probable cause in State v. Warner, Me., 237 A.2d 150 (1967) saying:

" 'Probable cause' is synonymous with 'reasonable grounds'. State v. MacKenzie, 161 Me. 123, 210 A.2d 24 (1965).

Probable cause has been defined as the evidence required to persuade a man of reasonable caution to believe that a crime is being committed or that it has been committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543, 552, 39 A.L.R. 790 (1925); Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). Less proof is required than to establish guilt and hearsay may be considered on the issue of probable cause. Draper v. United States, 358 U.S. 307, 311–313, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959)."

Here, Officer Dennis' radio warning that a break was in progress, his observation of the newly broken window and opened bars, the absence of suspects at the immediate scene, the voices coming from the second floor porch, the later presence of the Defendants on the roof of the adjacent four story building, lightly dressed, at midnight on a very cold winter night and their furtive action of concealment, would be sufficient to persuade a man of reasonable caution to believe that a crime had been committed and that the Defendants were involved in the crime.

The arrests were based on more than "mere suspicion" (Wong Sun v. United States, 371 U.S. 471, 479, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) ) and were completely justified.

" * * * [P]robable cause is not to be evaluated from a remote vantage point of a library, but rather from the viewpoint of a prudent and cautious police officer on the scene at the time of arrest." Jackson v. United States, 112 U.S.App.D.C. 260, 302 F.2d 194, 196 (D.C.Cir. 1962).

" * * * [D]eliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of *mens rea*, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an ar-

rest." Sibron v. New York, 392 U.S. 40, 66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968).

The searches which followed were properly incident to valid arrests. The coins found on Johnson and Ferrar were reasonably relevant to the charges of breaking, entering, and larceny in the nighttime and properly admissible as evidence against them and also against Mimmovich who was found with them under these unusual circumstances.

*The Breadpan and Hammer.*

■ The proprietor of the pool room testified that the breadpan was installed under one of the pool tables when he locked up the pool room not more than an hour before the break. The hammer was last seen in the pool room at about the same time. The jury might properly consider the presence of the hammer on the second floor and the breadpan on the third floor of the building on the roof of which the Defendants were hiding as valid links in the chain of circumstantial evidence which led them to the conclusion that Defendants' guilt had been proved. Their admission into evidence was not error.

*Defendants' Motions for Judgments of Acquittal.*

At the completion of the prosecution's case the Defendants moved unsuccessfully for judgments of acquittal. M.R.Crim.P., Rule 29. The Justice's denial of the motion was not error. The jury could properly have concluded from the testimony of Mrs. Gilpatrick that she had seen Ferrar inside the pool room in the act of breaking open one of the coin machines and that one other person was inside the pool room, aiding and abetting him, while another young man was outside consistent with allowing the jury to find that he was acting as a lookout. A reasonable inference would be that access had been gained through the broken window, that, after being observed, the thieves had attempted to escape into the building to the rear of the pool hall and that the abandoned hammer and breadpan with its money marked the course of their flight to the second and third floors. When found on the roof Ferrar and Johnson had unusually large quantities of change in their pockets. While Mimmovich was never identified as being one of the three persons seen at the time of the break and while no money was found on his person at his arrest, the unusual circumstances of his presence with the other two on the rooftop a few minutes after the break permitted the jury to conclude that his participation as a principal, and that of the other two, had been proven beyond a reasonable doubt by sufficient circumstantial evidence. State v. Richards, 85 Me. 252, 27 A. 122 (1893).

At the conclusion of the testimony all three defendants again moved for judgments of acquittal. Their motions were properly denied. The Defendants denied participation in the break, said they were together and otherwise occupied while the break must have been in progress and explained their unusual presence on the roof by saying that Ferrar, who was on parole, was in danger of being found out on the street in violation of his 11 o'clock curfew so the young men sought refuge there when they saw police in the area. Johnson sought to explain the considerable quantity of small change in his pocket by saying that he had raided his little niece's piggy bank. Ferrar's sister testified that Ferrar left her house on Montgomery Street, near the scene of the break, at 11:00 P.M. The jury was presented with typical questions of credibility which it resolved unfavorably to the Defendants.

*The Defendants' Request for Additional Instruction of the Jury.*

■ It was unnecessary for the Justice to comply with the Defendants' request that the jury be further instructed that

". . . there must be an intent to be part of the plan. Mere joinder of

an individual with anyone who may have been involved in an undertaking need not necessarily because of his presence at any given point make him a principal. There must be an intent to be involved."

The Justice had adequately covered this element in his own words (State v. Berube, 158 Me. 433, 185 A.2d 900 (1962) ) when he said:

> "Again I say it doesn't have to be each one of the defendants who entered. So long as any one of them entered the others were involved with him in a common plan, each is responsible.
>
> Perhaps another way of saying this is that if there is a common plan, it is like the Three Musketeers, all for one and one for all. So long as they are acting pursuant to a common design, what each one does is what all of them do, for the purposes of the law. But you must be satisfied that, as to each and every element, at least one of them did it as part of a common plan."

*Defendants' Motions for New Trial.*

The Defendants moved for new trials on the ground that misconduct of two jurors had been prejudicial to Defendants. At the hearing on this motion a witness testified that during a recess on the third day of the trial he had overheard a conversation between two members of the jury while they were passing through the corridor on their way to the courtroom. He testified that one juror was saying that he thought the first Defendant to testify was the guilty person and that the other juror disagreed saying he thought the first Defendant was innocent but that the second Defendant was the guilty person. The first juror insisted that the second Defendant was innocent.

■ The Justice denied the motion for new trial holding that while the jurors should avoid even private evaluations of the evidence during trial which might lead them to premature tentative conclusions which later testimony would rebut, such discussions are not ipso facto misconduct. Higgins v. Dean Gas Engine & Foundry Co., 140 Ky. 44, 130 S.W. 800 (1910). We agree. The conversation, it should be noted, was between two jurors only and not between a juror and a witness, or a lawyer, or any other person. Such conduct will not warrant a new trial unless the substantive rights of the complaining party were prejudiced. Furthermore, the danger that an expression of a tentative conclusion might lead the juror to a stubborn disregard of subsequent testimony in opposition to that position appears to be dispelled hereby the fact that the verdicts demonstrate that each juror did come to reverse part of his earlier stated opinion.

■ In any event, the Defendants' complaint came too late. Although the person who overheard the jurors' conservation on the third day of the trial brought it to the attention of the Defendants' attorneys immediately, it was not until the following day when the jury had heard further testimony, the attorneys' arguments and the Court's charge and had retired to deliberate that the Defendants' attorneys informed the Justice of the claimed misconduct. Counsel then filed formal motions which the Justice later acted upon following the jury verdicts of guilty.

■ If the Defendants felt danger of prejudice from the jurors' conversation, it was counsels' duty to have brought the matter to the Court's attention immediately so that the Court might have given a curative or cautionary instruction. A party feeling himself prejudiced by misconduct may not remain silent through the remainder of his trial, depriving the Court of possible opportunity to correct any error, in order that his choice whether or not to claim right to a new trial may rest upon his last minute evaluation of his chances of success in the present trial. McGuffie v. Hooper, 122 Me. 118, 119 A. 111 (1922);

Belcher v. Estes, 99 Me. 314, 59 A. 439 (1904).

Appeals denied.

All Justices concurring.

POMEROY and WERNICK, JJ., did not sit.