**STATE of Maine**

**v.**

**Robert MOWER.**

Supreme Judicial Court of Maine.

April 8, 1974.

John H. Fallon, County Atty., Belfast, George Bowden, Student, for plaintiff.

Daviau, Geller & Daviau by Robert J. Daviau, Waterville, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DELAHANTY, Justice.

The Appellant, Robert Mower, was indicted for assault with intent to rob one Dr. Harrison Aldrich, and was tried jointly with two other defendants, Halle and Clapperton, who were indicted for assault and battery of a high and aggravated nature. The trial was held before a single Justice of the Superior Court (Waldo County).

At the trial, defendants Halle and Clapperton pled guilty to assault and left the determination of aggravation to the trial Justice. Appellant Mower pled not guilty. Halle was found guilty of simple assault; Clapperton was found guilty of high and aggravated assault; Mower was found guilty of simple assault and sentenced to the county jail for a term of six months, the last three months suspended for two years. It is from this judgment that the Defendant now appeals.

The presiding Justice could reasonably find from the evidence that on the afternoon of September 20, 1972 in Waterville, Mower met a long time acquaintance named Kenneth Whitten. Mower asked Whitten if he would give him and his companion a ride to Unity and Whitten agreed. This group met James Clapperton, and Mower told Clapperton that they had arrived to Unity. Clapperton then got in the car, and they all went to an apartment on Gove Street where Mower and Clapperton went inside to pick up some liquor, which they drank after returning to the car. Before leaving Waterville for Unity, Whitten was asked to pick up Gregory Halle, who had spoken to Mower earlier in the day about going to Unity. Halle was picked up, and the group then proceeded to Unity. Mower claimed that the purpose of the trip was to get a prescription for drugs from Dr. Aldrich for a stomach ailment from which Mower was suffering.

When the group arrived in Unity, they went to the office of Dr. Harrison Aldrich. Whitten remained in the car, and the other four occupants of the automobile entered the office.

Upon entering, Mower asked the receptionist, Jean Ross, if the doctor was in. Mrs. Ross told him that the doctor was not in and inquired as to the reason for the visit. Mower told her of his stomach pain, and she suggested that he see a doctor in China who was holding office hours. Halle then requested to use the bathroom and went to the back of the office. Mower accompanied him. Upon hearing Dr. Aldrich approach the office through the back entrance from the garage, Mrs. Ross opened the door for him and silently motioned the doctor to his back office.

Mrs. Ross returned to the reception area and then went to the bathroom door to order the two men out. She ordered the two other men out of the office as well. At this point, a knife was directed at Mrs. Ross by one of the men and placed against her stomach. Another man grabbed her shoulder from behind. Mrs. Ross, and later Dr. Aldrich, identified the Appellant, Mower, as the person with the knife. Defendant Clapperton, however, admitted to being the individual who brandished the knife. The trial Justice accepted this version of the story and found that Clapperton was, in fact, the only person holding and using a knife during the events in Dr. Aldrich's office.

When confronted by the knife, Mrs. Ross yelled. Dr. Aldrich rushed out and was warned by Mrs. Ross that her assailants had a knife. She then ran out to the phone in the back office and called the State Police, leaving Dr. Aldrich with the men.

Dr. Aldrich testified that when he entered the office all the men were around

Mrs. Ross, and the knife-wielder was holding her up against the wall with the knife to her abdomen. Clapperton turned around and pointed the knife at Dr. Aldrich, who quickly lifted up the arm of the individual holding the knife and told him to leave. Two of the men in the office then assisted in escorting Clapperton out of the building.

Following the jury-waived trial, the presiding Justice concluded that the evidence did not support that portion of the indictment alleging "intent to rob." The Court did find Mower guilty of the lesser included offense of simple assault. In reaching this conclusion the Justice stated:

> [T]he fact that the doctor came in, and was himself, in the presence of this knife, and in the presence of that inflammable situation, indicates an element of assault, which unquestionably involves all that was before him, or before this Court.

The Appellant's sole argument on appeal is that the decision entered at his trial is completely unsupported by the evidence.[1]

At the close of the State's case, the Defendant moved for a judgment of acquittal, which was denied as it related to the offense of an assault upon the doctor. He filed no motion for acquittal, however, at the close of all the evidence (M.R.Crim.P., Rule 29(a)) or within 10 days after the verdict of guilty (M.R.Crim.P., Rule 29(b) and filed no motion for a new trial within 10 days after the verdict (M.R.Crim.P., Rule 33).

This Court has pointed out that a motion for acquittal made *prior* to the close of *all* the evidence does not present for review the sufficiency of all the evidence to support a verdict of guilty. State v. Sawyer, Me., 314 A.2d 830 (1974); State v. Cedre, Me., 314 A.2d 790 (1974); State v. Rowe,

Me., 238 A.2d 217 (1968). The foundation for appellate relief not having been laid at the trial level, the sufficiency of the evidence to support the verdict is not properly before us. State v. Sawyer, *supra;* State v. Cedre, *supra;* State v. Gamage, Me., 301 A.2d 347, 348 (1973); State v. Pullen, Me., 266 A.2d 222, 229 (1970).

We review the record for obvious error, which, if present, would entitle the Defendant to a new trial in spite of his not having presented the issue before the trial court. M.R.Crim.P., Rule 52(b). Upon such review we find no obvious error.

■ To be found guilty as a principal in the substantive crime of assault, an accused must have either been the perpetrator of the crime himself or, while being actually or constructively present, aided and abetted its commission.

Upon this record the Defendant was found not to be the actual and immediate prepetrator of the assault against the doctor. The Justice specifically accepted a version of the related events which placed the knife in the exclusive possession of Clapperton.

> I do make a finding, however, that the knife was a spontaneous action of just one of you, and it was not a calculated fact—as a matter of fact, the evidence is quite clear that [as] it relates itself to the doctor, that as soon as the doctor entered and the knife was shown at him, that two of you at least immediately escorted that person out of the building.

Separate from the incident with the knife, there is no evidence that violent acts were directed at the doctor by this Defendant. Nor does the evidence support a conclusion that the threatening activity directed at the receptionist placed the doctor in immediate physical danger.

1. Initially in his points of appeal, Appellant also raised the argument that the denial of Defendant's motion to remand the case to the District Court whereby the Defendant could be provided with a probable cause hearing was error of law and deprived the Defendant of his constitutional right to equal protection of the laws. This point was waived by the Appellant in his brief, and we see no merit in it as a substantive issue of law.

■■ We find within the record, however, ample evidence to conclude that Mower, by his conduct, aided and abetted in the commission of the felony of aggravated assault by Clapperton. 15 M.R.S.A. § 341 provides for prosecution and punishment of persons who "aid in the commission of a felony," as well as of persons who are accessories before the fact. It is not necessary to separately indict the accused as an aider and abettor or principal in the second degree. An indictment charging a defendant as a principal in the alleged crime is sufficient. State v. Berube, 158 Me. 433, 434, 185 A.2d 900, 901 (1962); State v. Burbank, 156 Me. 269, 279, 163 A.2d 639, 644 (1960); State v. Rainey, 149 Me. 92, 97, 99 A.2d 78, 82 (1953); State v. Saba et al., 139 Me. 153, 156, 27 A.2d 813, 815 (1942); State v. Flaherty, 128 Me. 141, 145, 146 A. 7, 9 (1929); 4 Wharton's Criminal Law and Procedure § 1790 (R. A. Anderson ed. 1957).

The evidence does show that the conduct of the Defendant was sufficient to convict him as a principal in the second degree.[2] This Court has described the nature of those elements which must exist to support a conviction of an accused as a principal in the second degree:

> [S]omething more than mere presence must be proved in order to convict as a principal a person who is not the actual perpetrator of the crime. It is sufficient if such person aided, abetted, assisted, advised or encouraged another in the commission of the crime, or was present for such purpose to the knowledge of the perpetrator. Likewise, any concerted participation in a general felonious plan, together with actual or constructive presence, is sufficient to make a person a principal as to any crime committed in execution of the plan. State v. Berube, supra at 158 Me. 434, 185 A.2d 901, 902.

■■ Title 15 M.S.R.A. § 341 clearly provides for punishment of an aider and abettor in the same manner as prescribed for the first degree principal felon. The principal in the second degree differs from the principal in the first degree only in that he does not do the felonious deed himself or with the aid of an innocent agent, but rather he aids, commands, counsels or encourages a culpable party to perpetrate the crime. To convict a principal in the second degree, the State must prove actual or constructive presence,[3] intent, and some form of participation in the prepetration of the crime.

By his own testimony, the Defendant placed himself in Dr. Aldrich's office along with three friends when the events in question occurred. The evidence indisputably indicates that he was in close proximity to James Clapperton during his allegedly assaultive conduct.

To determine guilt or innocence, we look to defendant's intent:

> "[K]nowledge or intent is seldom capable of direct proof. It is usually inferred from the proven surrounding circumstances. [citations omitted] Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed." State v. Berube, supra at 158 Me. 436, 185 A.2d 902—quoting State v. Kneedy, 232 Iowa 21, 3 N.W.2d 611

---

2. The person actually perpetrating a crime is ordinarily termed a "principal in the first degree," and one present aiding and abetting is termed a "principal in the second degree." State v. Berube, 158 Me. 433, 434, 185 A.2d 900, 901 (1962).

3. The sole distinction between a principal in the second degree and an accessory before the fact is the matter of presence. The principal in the second degree is present at the perpetration of the felony, either actually or constructively, whereas the accessory before the fact is absent. The same aid, command, counsel, procurement or encouragement which will make one a principal in the second degree if he is present at the time a felony is committed, will make him an accessory before the fact if he is absent. Cf. State v. Heald, Me., 307 A.2d 188, 197 (1973).

(1942); *accord*, State v. Depuis, 159 Me. 100, 101, 188 A.2d 688, 689 (1963).

∎ In this case, the trial Justice considered the relevant evidence in its entirety in finding the requisite element of intent on the part of the Defendant.

> I am taking into consideration all of the circumstances that took place that day, including the obvious assault upon the secretary, so that this Court was able to determine at least a mental attitude of all three of you as it concerned itself with the doctor as you entered the premises.

Whether an alleged aider and abettor knew and shared the perpetrator's criminal intent is a fact question to be inferred by the fact finder from the circumstances. People v. Martin, 12 Cal.2d 466, 85 P.2d 880 (1938); State v. Ochoa, 41 N.M. 589, 72 P.2d 609 (1937). The finding of the Justice in this case relative to intent is a reasonable interpretation of the supporting evidence.

∎ While aiding and abetting requires more than mere presence, presence under some circumstances may itself indicate an active encouragement of the crime. "When the bystander is a friend of the perpetrator, and knows that his presence will be regarded by the perpetrator as an encouragement and protection, presence alone may be regarded as an encouragement." 1 Wharton's Criminal Law and Procedure § 108 (R. A. Anderson ed. 1957).

> [A] defendant can be held responsible as an aider and abettor of a crime even where there is no direct proof that he intended to aid in the crime, if he is substantially involved in the chain of events leading to it. United States v. Greer, 467 F.2d 1064, 1069 (7th Cir. 1972) (dictum), cert. denied, 410 U.S. 929, 93 S.Ct. 1364, 35 L.Ed.2d 590.

Similarly, under certain circumstances this Court has found the failure to intervene in the commission of a crime to be evidence of encouragement.

> The general rule is that there is no duty on the part of a bystander to prevent the commission of a crime. However, if he fails to do so, and particularly when he is a friend of the actual perpetrator, such failure may be considered, with all other circumstances of the case, in determining whether he aided or abetted the commission of the crime. The conduct of the respondent before and after the commission of the crime, including companionship with the actual perpetrator, may likewise be considered by the jury as bearing on the respondent's guilt. State v. Berube, *supra* at 158 Me. 435, 436, 185 A.2d 902.

These principles of law underlie the finding of the Appellant's guilt. The Court, in making its findings, stated:

> [T]here is no doubt in my mind that you [Mower] were the perpetrator of this entire event, that you were the one that collected all these people, and you were the one that brought them to the scene.

∎ The extent of such encouragement is unimportant. The slightest degree of assistance or collusion is sufficient. United States v. Wisniewski, 478 F.2d 274, (2nd Cir. 1973); United States v. Garguillo, 310 F.2d 249 (2nd Cir. 1962); People v. Demes, 220 Cal.App.2d 423, 33 Cal.Rptr. 896 (1963), cert. denied, 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 308 (1964); State v. Ramsay, Mo., 368 S.W.2d 413 (1963); Commonwealth v. Pierce, 437 Pa. 266, 263 A.2d 350 (1970).

∎ It was only after the doctor brushed the assailant's arm aside and ordered him out of the office that Mower expressly and assertively disassociated himself from any *further* criminal conduct. Mower's action in helping to remove Clapperton *after* the assault could not exonerate him of the crime already committed. Such efforts could not relinquish or diminish responsibility for criminal acts to which his culpability had already attached.

∎ Although an issue was not raised on appeal with respect to the variance between the verdicts found against Clapperton, the principal, and Mower, the aider

and abettor, we find it proper to give consideration to the issue. As a criminal act committed in a joint offense is imputed to all principals, an aider and abettor shares full responsibility and is subject to equal punishment with the immediate perpetrator.[4] Clapperton was found guilty of assault of a high and aggravated nature. The Mower indictment included the lesser offense of simple assault, for which he was found guilty.

The Appellant is not entitled to a reversal of the conviction on the theory that the facts in his case proved a higher degree of conduct involving the element of aggravation. State v. Devoe, Me., 301 A.2d 541, 543 (1973); State v. Heald, Me., 292 A.2d 200 (1972). He may not now complain of his good fortune in not being convicted of a greater offense, which may have been warranted on the facts.

■ Verdicts as between two defendants tried together need not show a rational consistency. In State v. Devoe, *supra*, this Court specifically allowed a finding of guilt of assault of a high and aggravated nature against one defendant and guilt of simple assault against a codefendant, where both men were tried together for facts arising out of the same transaction. Considering a hypothetical inconsistency of verdicts in *Devoe*, we commented:

> [I]t is the modern view that criminal verdicts as between two or more defendants tried together need not demonstrate rational consistency. 301 A.2d at 544;

*See also*, State v. Jordan, 105 Ariz. 250, 462 P.2d 799 (1970); People v. Pickens, 269 Cal.App.2d 844, 75 Cal.Rptr. 352 (1969); Taylor v. State, 159 Fla. 74, 31 So.2d 47 (1947); People v. Hovnanian, 16 App.Div.2d 818, 228 N.Y.S.2d 771 (1962), rearg. denied, 22 App.Div.2d 686, 253 N.Y.S.2d 241, ovrld. on other grounds, People v. Huntley, 15 N.Y.2d 72, 255 N.Y.S.2d 838, 204 N.Y.2d 179, cert. denied, 373 U.S. 939, 83 S.Ct. 1544, 10 L.Ed.2d 694. *See*, Annot., 22 A.L.R.3d 717 (1968).[5]

■ 15 M.R.S.A. § 341, in providing that an aider be "punished in the manner prescribed for the punishment of the principal felon," merely directs the Court to sentence the aider (or the accessory before the fact) as a principal. As the crime itself is a substantive one not dependent on any prior or concurrent convictions of accomplices, the statute does not require a uniformity of convictions or sentences among parties to the crime. In the present case, the Defendant, as a party to the crime, was charged with a greater offense and found guilty of, and sentenced consistently with a lesser included offense. Such action would have also been appropriate had the Defendant been the immediate perpetrator of the crime. The statute requires nothing more.[6]

The entry shall be,

Appeal denied.

All Justices concurring.

---

4. 15 M.R.S.A. § 341 allows for: "Whoever aids in the commission of a felony, . . . shall be punished in the manner prescribed for the punishment of the principal felon."

5. An examination of cases in this area indicates that the rule as to inconsistency of verdicts between codefendants applies to cases prosecuted before a judge without a jury, as well as to those tried before a jury.

6. 15 M.R.S.A. § 341 relates to the commission of felonies. The general rule appears to be that in misdemeanors there is no distinction between principals of the first and second degree. All parties are merely designated principals. West v. State, 74 Ga.App. 453, 40 S.E.2d

156 (1946); Dodys v. State, 73 Ga.App. 311, 36 S.E.2d 164 (1945); *see* 22 C.J.S. Criminal Law § 81; *cf.* State v. Vicniere, 152 Me. 293, 128 A.2d 851 (1957); State v. Allen, 151 Me. 486, 121 A.2d 342 (1956); Commonwealth v. Sherman, 191 Mass. 439, 78 N.E. 98 (1906). This distinction in the classification of aiders and abettors as to felonies and misdemeanors is one of formality only and carries with it no differing theories of criminal liability. Aiding and abetting the commission of a misdemeanor makes one a principal to that crime. In the present case, the Defendant was charged with a felony and did, in fact, aid in the commission of a felony. He was found guilty of only a misdemeanor, however.