**STATE of Maine**

v.

**Edward GADDIS and Joseph Clifford.**

Supreme Judicial Court of Maine.

July 10, 1974.

Henry N. Berry, III, County Atty., Peter G. Ballou, Asst. County Atty., Portland, for State.

Daniel G. Lilley, Kenneth E. Snitger, Portland, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WERNICK, Justice.

Defendants Edward Gaddis and Joseph Clifford were separately indicted for having violated 17 M.R.S.A. § 251[1] in "at-

---

1. 17 M.R.S.A. § 251 provides:
"Whoever attempts to commit an offense and does anything towards it, but fails or is interrupted or is prevented in its execution, where no punishment is expressly provided for such attempt, shall, if the offense

tempting to break and enter" Bernie's Market, a small variety store situated in the City of Portland on the southeasterly corner of the intersection of Ocean Avenue and Codman Street. Tried together before a jury, each of the defendants was found guilty as charged. Each has appealed from the judgment of conviction entered against him, and the appeals have been consolidated in this Court.

Identical points are raised in the appeals that: (1) the presiding Justice committed reversible error in denying defendants a mistrial because of a remark alleged to be highly prejudicial to defendants made by the prosecutor as he was in process of resting the State's case; and (2) defendants were entitled to a judgment of acquittal because the evidence was insufficient to prove the crime charged against defendants.

We deny the appeals.

The evidence warranted the following jury findings of fact.

On August 4, 1971, shortly after midnight, two Portland police officers while on their way home from work were riding in an automobile owned by one of them. They were driving southerly on Codman Street when they observed three men walking together in a northerly direction on Codman Street toward its intersection with Ocean Avenue. The men were then approximately 200 feet from the intersection. The officers proceeded southerly on Codman Street for approximately a hundred and fifty yards and then reversed their direction to "take a better look" at what the three men might be doing. They drove northerly on Codman Street and came to the Ocean Avenue intersection without noticing the three men. Making a right turn into Ocean Avenue, the policemen went easterly for a short distance. Still seeing nothing of the three men, the officers

changed direction and moved westerly on Ocean Avenue. As they once more came to the intersection of Codman Street and Ocean Avenue, they turned left into Codman Street and almost immediately thereafter saw the men for whom they were looking; the three of them were standing on a small platform (approximately a foot and a half in depth) at the rear of the structure housing "Bernie's Market." Shining a flashlight at the area, the officers saw the two defendants standing on the platform immediately behind the third man who was engaged in prying with a crowbar against the back door of the store.

The officers emerged from the automobile and one of them shouted: "Halt, police." Forthwith, the man who had been prying at the door leaped from the platform and ran across a yard. One of the officers fired a shot at him but he disappeared through a fence. The two defendants jumped from the platform into some tall grass and were lying in the deep grass when the police came upon them and apprehended them. At no time was a crowbar or any other instrument in the actual possession or control of either of the defendants.

### I.

■ As to alleged error in the denial of the motions for mistrial the material facts are these.

Prior to the commencement of trial, and in the absence of the jury, the prosecutor had moved that the presiding Justice order a "view" by the jury of Bernie's Market and its location. The motion was denied. During the presentation of the State's case the police officers illustrated details of their testimony by making blackboard sketches of the platform area in the rear of Bernie's Market. Defendants introduced into evidence photographs of this

---

thus attempted is punishable with imprisonment for life, be imprisoned for not less than one nor more than 10 years; and in all other cases he shall receive the same

kind of punishment that might have been inflicted if the offense attempted had been committed, but not exceeding ½ thereof."

same general area, using the police officers to identify the photographs as generally fair reproductions. The police officers, however, emphasized that the angles from which the photographs had been taken and the depth perspectives created in them did not accurately portray the view seen by the police officers as they had been positioned to observe the events at issue.

Against this background the prosecutor, as he was completing the State's presentation of evidence, sought to have the presiding Justice reconsider whether the jury should have a "view." Within the hearing of the jury, the prosecutor said:

"Your Honor, at this time, I would like to press my motion to permit the jury to go to the premises . . . ."

Before the prosecutor could say more, the presiding Justice interrupted him and called for a conference at side bar. At side bar the Justice told the prosecutor:

"I don't want the jury to hear you make that motion." Thereupon, while still at side bar defense counsel moved for a mistrial on the grounds that what the jury had already heard was enough to prejudice defendants.

The presiding Justice denied the motions for mistrial and left it to the attorneys for the defendants to decide whether they wished him to instruct the jury to disregard the remarks of the prosecutor or to allow the incident to pass without a corrective statement to the jury. Believing that any further comment would only emphasize the effect of the prosecutor's remarks and thereby compound prejudice to the defendants, defense counsel chose to rely on their claims that prejudice had already been caused which was beyond repair by a corrective instruction. They requested the presiding Justice to say nothing to the jury and he abided by this request.

Defendants now contend on appeal that they were irremediably prejudiced because the remark of the prosecutor, combined with the protests of the police officers that the photographs did not accurately depict the angles from which they had made their observations, must have led the jury to conclude that, in the words of defendants,

"the photographs were taken with the design to embarrass the police officers or deceive the jury."

The contention of defendants is unrealistic. The record shows plainly that, independently of the prosecutor's remark, the jury was already well aware that one of the main issues for them to decide was the weight which they should give the photographs in arriving at their findings of fact as to what had transpired on the platform at the rear of Bernie's Market. Hence, the only certain effect of the prosecutor's "pressing" his motion for a view was that the jury was exposed, indirectly, and at an earlier time than in ordinary course, to a minor portion of the very message which the prosecutor would have the right to, and would surely, present to the jury directly, forcefully and extensively in his closing argument—that there were serious questions as to whether the photographs adequately reflected the actual observational angles and perspectives of the police officers as eye-witnesses.

Moreover, in the total circumstances the remark of the prosecutor could well have led the jury to believe that far from being "designed" to "embarrass" witnesses or to "deceive" the jury, the photographs were fundamentally accurate as to angles and depth perspectives. The jury was aware that despite the "pressing" of the prosecutor, the presiding Justice persisted in refusing to order a jury "view." It would, therefore, be natural for the jury to infer that the presiding Justice considered the prosecutor's claims of inaccuracy in the photographs exaggerated or otherwise unjustified. In this aspect, the remark of the prosecutor would eventuate as beneficial, rather than prejudicial, to defendants.

The point is that the nature of the inferences likely to be drawn by the jury was a matter sufficiently within the realm of spec-

ulation to render unconvincing defendants' claims of ineradicable prejudice. Clearly, then, the decision of the presiding Justice in the instant situation was well within the bounds of the broad discretion reposing in him concerning whether to grant, or deny, a mistrial.

## II.

■ Defendants maintain that their appropriate motions for judgments of acquittal should have been granted by the presiding Justice because the evidence was insufficient to support a conclusion that defendants committed either (1) the overt act alleged in the indictment as one essential element of the crime charged—

". . . attempting to force the rear door [of Bernie's Market] with a crowbar",

or (2) any other act of force against any part of the structure.

Defendants are correct that the evidence fails to show that defendants had *themselves* so acted *in fact*. But this is not *ipso facto* controlling in legal effect to require the acquittal of defendants. Defendants remain legally chargeable, as "principals", for the commission by a third person of the overt act alleged in the indictment if defendants were not only present during its commission but also in any manner

" '. . . aided, abetted, assisted, advised or encouraged . . . [the third person] in . . . [it] . . . or . . . [were] present for such purpose to the knowledge of the perpetrator.' " State v. Mower, Me., 317 A.2d 807, 811 (1974) quoting from State v.

Berube, 158 Me. 433, 434, 185 A.2d 901, 902 (1962)

State v. Mower, supra, contains this Court's most recent and extended analysis of the "principal" rationale of legal accountability for a felony. Within the scope of that doctrine as promulgated in State v. Mower there was here sufficient proof to support the guilt of the defendants, as "principals", of the felony charged, in light of the evidence that: (1) shortly after midnight defendants were walking in company with the third person who was later to use a crowbar to pry the rear door of Bernie's Market; (2) defendants went with said third person from a public street and entered upon the private property of another, the platform adjacent to the rear door of Bernie's Market—Bernie's Market being then closed to the public; (3) while the third person was in the process of using a crowbar to pry at the door, defendants were in a position close to him and never gave affirmative indication of seeking to disassociate themselves from him or what he was doing until policemen appeared and shouted: "Halt, police"; and (4) defendants immediately thereafter jumped from the platform into some high grass in which they were lying down when the police apprehended them.

The presiding Justice was correct in his ruling denying each defendant's motion for judgment of acquittal.

The entries are:

Appeal of Edward Gaddis denied.

Appeal of Joseph Clifford denied.

POMEROY, J., did not sit.

All Justices concurring.